LEONE, J.A.D.
*174 The State has charged defendant Brandon M. Washington with two counts of attempted murder, and he is awaiting trial. In Docket No. A-1780-17, the State appeals the trial court's orders on November 28 and 29, 2017, and its denial of reconsideration on December 6, 2017. Those orders excluded the State's DNA evidence, denied its motion for a postponement of trial, and rejected its request for excludable time under N.J.S.A. 2A:162-22, the speedy trial statute in the Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26. In Docket No. A-2051-17, defendant appeals the trial court's orders dated December 12 and 22, 2017, granting excludable time. We consolidate these back-to-back appeals for purposes of our opinion.
We hold the State Police Lab's draft DNA report was not "within the possession, custody or control of the prosecutor" until the lab sent it to the county prosecutor, and in any event was not *175 discoverable until the report was reviewed and approved by the lab. R. 3:13-3(b)(1)(C). Regardless of the speedy trial provisions, the trial court abused its discretion by excluding the DNA evidence rather than granting a continuance of trial under Rule 3:13-3(b)(1)(I) and -3(f), given the evidence's importance and the absence of surprise, prejudice, or a design to mislead.
We also hold that under the speedy trial rule and statute, a case may be "complex" if it has "complicated evidence," but time is excludable only if the complexity makes it unreasonable to expect adequate preparation for trial in the speedy trial period. R. 3:5-4(i)(7); see N.J.S.A. 2A:162-22(b)(1)(g). Moreover, the provision addressing failures to produce discovery is a limit on excludable time. N.J.S.A. 2A:162-22(b)(2). The court properly excluded time sua *1150 sponte under N.J.S.A. 2A:162-22(b)(1)(c), and retained jurisdiction to do so after the State sought and obtained leave to appeal. That provision excludes the time while an emergent relief request, or interlocutory appeal, is pending in this court. Time while the trial is stayed is excludable under N.J.S.A. 2A:162-22(b)(1)(l).
As a result, we affirm in part, reverse in part, and vacate in part in A-1780-17. We affirm as modified in A-2051-17.
I.
The State alleges that, on February 16, 2017, defendant shot two men in the Veterans of Foreign Wars (VFW) Hall in Willingboro. The State asserts that after defendant fled, a pair of eyeglasses was found at the VFW Hall in the area where he struggled with one of the men. The State claims defendant was seen wearing similar eyeglasses both in a video taken minutes before the shooting, and in photographs on Facebook.
The Burlington County Prosecutor's Office (BCPO) obtained DNA swabs from defendant and the two victims. On March 2, the BCPO took the swabs and the eyeglasses to the Central Regional Laboratory (State Police Lab) of the New Jersey State Police (NJSP).
*176 Meanwhile, the State arrested defendant and successfully moved for pretrial detention. On May 25, a grand jury indicted defendant with two counts of attempted murder in violation of N.J.S.A. 2C:5-1(a)(3) and N.J.S.A. 2C:11-3(a)(1). The court scheduled defendant's trial to begin November 28, and set defendant's release date as December 2.
On November 16, the BCPO received an email from the State Police Lab attaching the one-page DNA lab report signed by "Christine Bless, Forensic Scientist I." The lab report stated that "[a] mixture of DNA profiles consistent with at least two contributors was identified" on the eyeglasses, and that defendant was "the source of the major DNA profile obtained." The BCPO emailed the lab report to defendant's counsel that same day.
On November 17, the State filed a motion to declare that this was a complex case and that the sixty days from November 17, 2017 to January 17, 2018, were excludable time under N.J.S.A. 2A:162-22(b)(1)(g). The State also asked for a sixty-day adjournment of trial. Defendant orally moved to exclude the DNA results.
At the November 28 hearing on the motions, the trial court found this was not a complex case, and denied the State's request for sixty days of excludable time. The court granted excludable time from the November 17 filing of the State's motion to its disposition on November 28, extending defendant's release date to December 13.
In a November 29 letter-opinion, the trial court granted defendant's motion to prohibit the State from introducing the DNA evidence and denied the State's motion for an adjournment of trial. The court later issued corresponding orders.
On November 30, the State filed a motion for reconsideration. It attached a certification from the prosecutor stating what he had learned concerning the timing in the State Police Lab. Defense counsel argued the prosecutor's certification was not based on personal knowledge as required under Rule 1:6-6. The court gave *177 the State until December 5 to provide a certification from someone at the State Police Lab.
On December 1, the State provided a certification based on personal knowledge from Bless of the State Police Lab. Her certification stated as follows. The eyeglasses and swabs were submitted by the BCPO to the State Police Lab on March 2.
*1151 The eyeglasses were processed on March 3, and a swab from the eyeglasses was submitted for analysis on March 10. On July 20, Bless was assigned to analyze this evidence for DNA as a Forensic Scientist I. On July 25, Bless generated a lab report containing the result of her analysis, namely that there was a mixture of DNA profiles in which defendant was the major contributor.
Bless's certification then described the review process:
6. On or about August 8, 2017 the required technical (peer) review of this case file was initiated. Shortly thereafter, the case file was forwarded to the NJSP DNA Technical Leader for approval of the DNA profile interpretation of [the swab from the eyeglasses]. This approval was required due to recent changes to the interpretation guidelines in the NJSP DNA Laboratory.
7. Due to a number of factors including, but not limited to, the current work load of the NJSP DNA Technical Leader, her supervisory responsibilities, NJSP DNA Laboratory management requirements including Bail Reform and expedited cases which affect the prioritization of case file review, the approval of the DNA profile interpretation of [the swab from the eyeglasses] was completed on November 3, 2017.
8. On November 3, 2017, the case file was returned to the technical (peer) reviewer in order to complete this review. The technical (peer) review was completed November 3, 2017.
9. Shortly thereafter, the DNA case file was submitted to a Forensic Scientist 3 to conduct the required administrative review. This administrative review was completed on November 8, 2017.
10. Due to clerical staff shortages, the finalized and approved DNA report was digitized and emailed from the NJSP DNA Laboratory to the Burlington County Prosecutor's Office on or about November 16, 2017.
The prosecutor gave further explanation in his own certification and oral argument. He argued that during this period the State Police Lab "went from analyzing 15 allele sites to 26 allele sites which results in more accurate testing."[1] He certified this "recent *178 change in the science and method by which interpretation of mixtures of DNA are conducted made the NJSP Lab Technical Leader the only employee qualified to interpret DNA mixtures in the absence of approved scientific procedures for this manner of analysis," resulting in a "large number of cases which had to be analyzed by the NJSP DNA Lab Technical Leader." The prosecutor argued this temporary problem was subsequently resolved because protocols for such analysis were approved.
At the December 6 hearing, defense counsel objected to the form of the certifications,[2] and to the failure to produce the *1152 full DNA packet.[3] The court expressed concern at these shortfalls but, "assuming for the sake of argument" the certifications were proper, the court denied reconsideration. The court granted the State's motion for a stay through December 7 to allow the State to file an emergent interlocutory appeal to this court.
On December 7, we granted the State's application for permission to file an emergent motion. We stayed trial pending resolution of the emergent motion, and ordered briefing on the motion to be completed by December 14. On December 12, the trial court ruled the period between December 6 and December 14 was excludable time.
*179 On December 14, we granted the State's emergent motions for leave to appeal and for a stay of trial pending appeal. We expedited the appeal. We did not stay defendant's release from detention if authorized by law. On December 22, the trial court ruled the period between December 14, 2017, and February 28, 2018, was excludable time, and denied defendant's motion for a stay pending appeal of its December 12 and 22 orders. On December 23, we granted defendant's application to file an emergent motion. On January 9, 2018, we granted defendant's emergent motion for leave to appeal the December 12 and 22 orders, but denied his motion for a stay.
In its appeal, the State raises the following issues:
POINT I-THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE STATE'S MOTION FOR 60 DAYS OF EXCLUDABLE TIME PURSUANT TO N.J.S.A. 2A:162-22b(1)(d) and (g).
POINT II-EVEN IF THIS HONORABLE COURT CONCLUDES THAT THE STATE VIOLATED R. 3:13-3b(1)(i), EXCLUSION OF THE DNA EVIDENCE IS NOT THE APPROPRIATE REMEDY.
POINT III-IF THIS HONORABLE COURT DETERMINES THAT THE TRIAL COURT PROPERLY DENIED THE STATE'S MOTION FOR RECONSIDERATION OF THE TRIAL COURT'S DENIAL OF ITS MOTION FOR EXCLUDABLE TIME, THE COURT MUST REMAND THE MATTER TO THE TRIAL COURT FOR CONSIDERATION OF THE STATE'S ARGUMENT THAT DEFENDANT MUST BE DETAINED PURSUANT TO N.J.S.A. 2A:162-22B(2) AND R. 3:25-4c(2).
Defendant's appeal raises the following substantive point:
THIS COURT SHOULD ORDER DEFENDANT'S IMMEDIATE RELEASE BECAUSE THE TRIAL COURT LACKED JURISDICTION TO ENTER ITS DECEMBER 12, 2017 AND DECEMBER 22, 2017 ORDERS PRECLUDING HIS RELEASE. IN ADDITION, THE TRIAL COURT'S ORDERS PRECLUDING DEFENDANT'S RELEASE PENDING APPEAL ARE CONTRARY TO THIS COURT'S DECEMBER 14, 2017 ORDER STATING THAT DEFENDANT'S RELEASE IS NOT STAYED PENDING APPEAL.
II.
We first consider the State's appeal of the exclusion of its DNA evidence *1153 as a discovery sanction. We must hew to our standard of review. "A trial court's resolution of a discovery issue is entitled to substantial deference and will not be overturned *180 absent an abuse of discretion." State v. Stein, 225 N.J. 582, 593, 139 A.3d 1174 (2016). We "need not defer, however, to a discovery order that is well 'wide of the mark,' or 'based on a mistaken understanding of the applicable law.' " State v. Hernandez, 225 N.J. 451, 461, 139 A.3d 46 (2016) (citations omitted). "Our review of the meaning or scope of a court rule is de novo; we do not defer to the interpretations of the trial court ... unless we are persuaded by [its] reasoning." State v. Tier, 228 N.J. 555, 561, 159 A.3d 388 (2017).
A.
Rule 3:13-3 requires the prosecutor to provide the defendant the "results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the matter or copies thereof, which are within the possession, custody or control of the prosecutor." R. 3:13-3(b)(1)(C). The BCPO turned over the DNA report on the same day the BCPO received it from the State Police Lab. However, the trial court rejected the BCPO's argument that the State Police Lab as a State agency is not under the control of a county prosecutor's office.
However, we have ruled that "[t]he State is not obliged to produce testing-related documents unless they 'are within the possession, custody or control of the prosecutor.' " State v. Robertson, 438 N.J.Super. 47, 68-69, 102 A.3d 381 (App. Div. 2014) (quoting R. 3:13-3(b)(1)(C) ), aff'd on other grounds, 228 N.J. 138, 155 A.3d 571 (2017). Thus, in Robertson, we held the prosecutor had no obligation to provide the defendant with testing results generated by the private manufacturer of a breathalyzer device when the State returned the device to the manufacturer for service, because "[t]here is no evidence in the record to indicate that the State controls the repair-related data generated by" the manufacturer. Id. at 56, 69, 102 A.3d 381.
Relying on Robertson, we have held a prosecutor had no obligation to provide reports of physical or mental examinations of the crime victim because there was "no evidence the State possessed *181 the various records defendant sought." State v. Kane, 449 N.J.Super. 119, 133, 155 A.3d 612 (App. Div. 2017). "[E]vidence in the control of a crime victim-notwithstanding the victim's close cooperation with the prosecution-is not within the prosecutor's 'possession, custody or control.' " Ibid. (quoting Robertson, 438 N.J.Super. at 69, 102 A.3d 381 ). Both Kane and Robertson cited our Supreme Court's decision that a crime victim's home is not "within the possession, custody or control of the prosecutor" under Rule 3:13-3(b)(1)(E). State in Interest of A.B., 219 N.J. 542, 556, 99 A.3d 782 (2014).
Our Supreme Court has also delineated the scope of "the possession, custody and control of the prosecutor" regarding law enforcement officers. State v. W.B., 205 N.J. 588, 608, 17 A.3d 187 (2011) (quoting R. 3:13-3(c)(6), (7) and (8) (2007) ). The Court held Rule 3:13-3 "encompasses the writings of any police officer under the prosecutor's supervision as the chief law enforcement officer of the county." Id. at 608, 17 A.3d 187. "If a case is referred to the prosecutor following arrest by a police officer as the initial process, or on a complaint by a police officer, local law enforcement is part of the prosecutor's office for discovery purposes." Ibid. (citations omitted); see State v. Richardson, 452 N.J.Super. 124, 133, 138, 171 A.3d 1270 (App. Div. 2017).
*1154 Under our Supreme Court's interpretation of Rule 3:13-3 in W.B., the trial court erred in ruling that Bless's July 25 draft report was "within the possession, custody or control of the [county] prosecutor" when it was actually in the possession custody, and control of the State Police Lab. R. 3:13-3(b)(1)(C). A county prosecutor has no supervisory authority over the State Police Lab, which is part of the NJSP. The NJSP is a Division within the Department of Law and Public Safety, which is headed and supervised by the Attorney General. N.J.S.A. 52:17B-2, -6. The State Police Lab-"notwithstanding [its] close cooperation with the prosecution-is not within the prosecutor's 'possession, custody or control.' " See Kane, 449 N.J.Super. at 133, 155 A.3d 612 (citations omitted). Thus, the trial court's ruling was "based *182 upon a 'mistaken understanding of the applicable law,' requiring reversal" of its exclusion decision. Tier, 228 N.J. at 565, 159 A.3d 388 (citation omitted).
There is no evidence the BCPO even knew of let alone controlled Bless's DNA report until it was emailed to the BCPO on November 16. The BCPO provided it to defendant that same day. Thus, the BCPO promptly complied with its "continuing duty to provide discovery pursuant to this rule." R. 3:13-3(f). As our Supreme Court recently noted, if proceedings occur "before lab tests are completed, the results, as well as other relevant items that later come into the State's possession, will be disclosed as part of the State's continuing discovery obligation." State in Interest of N.H., 226 N.J. 242, 257, 141 A.3d 1178 (2016) (citing R. 3:13-3(f) ). Thus, the BCPO did not commit a discovery violation.
B.
In State v. Robinson, 229 N.J. 44, 160 A.3d 1 (2017), our Supreme Court analyzed the different discovery rule for pretrial detention hearings, which provided "the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application." Id. at 60-61, 160 A.3d 1 (quoting R. 3:4-2(c)(1)(B) (eff. Jan. 1, 2017) ). The Court stated: "Consistent with longstanding practice, statements and reports encompass reports that are in the possession of the prosecutor, law enforcement officials, and other agents of the State." Id. at 71, 160 A.3d 1 (citing W.B., 205 N.J. at 608, 17 A.3d 187, and State v. Murphy, 36 N.J. 172, 184, 175 A.2d 622 (1961) ).
Although the Court mentioned "other agents of the State," the materials at issue in Robinson were in the hand of local law enforcement. See id. at 51, 63-65, 71, 77, 160 A.3d 1. The Court did not suggest its interpretation of Rule 3:4-2 broadened the scope of Rule 3:13-3 determined in W.B. Rather, Robinson stated its guidance was "[c]onsistent with longstanding practice," citing W.B.'s holding that "local law enforcement is part of the prosecutor's *183 office for discovery purposes." Robinson, 229 N.J. at 71, 160 A.3d 1 (citing W.B., 205 N.J. at 608, 17 A.3d 187 ).
Robinson also cited Murphy, but Murphy does not support the proposition that documents in the possession of an entity not under the supervisory authority of a county prosecutor are within the possession, custody or control of the prosecutor. Murphy involved the defendant's statements to the Waterfront Commission, which it provided "to the Attorney General, thus informing him of an alleged crime and resulting ultimately in the indictment in this matter." 36 N.J. at 176, 175 A.2d 622. The Commission then objected to the statements' further use, and the Attorney General returned them to the Commission. Id. at 177, 175 A.2d 622. The Supreme Court acknowledged the then-existing discovery *1155 rule was "limited in terms to what the prosecutor possesses." Id. at 181, 175 A.2d 622 (citing R.R. 3:5-11). Instead, the Court held the Commission could be subpoenaed to provide the statements, because, "although the State may, as it necessarily must, diffuse its total power among many offices and agencies, yet when the State brings its authority to bear upon one accused of crime, all of its agents must respond to satisfy the State's obligation to the accused." Id. at 184, 175 A.2d 622. Thus, Murphy did not hold that documents were obtainable under the discovery rule from the prosecutor, who no longer possessed them; rather, the Court ruled they were obtainable by subpoena from a third party, the Commission. Id. at 181, 175 A.2d 622.
Thus, Robinson's interpretation of Rule 3:4-2 did not change the Court's interpretation of Rule 3:13-3 established in W.B., and reinforced in A.B., Robertson, and Kane.See State v. Dickerson, 232 N.J. 2, 21, 177 A.3d 788 (2018) (denying "that the requirements of the two rules are identical"). Because the State Police Lab was not under the control of the BCPO, the BCPO did not have possession, custody, or control over Bless's DNA report until the BCPO received it and disclosed it on November 16.
*184 Importantly, there is no claim the DNA report was exculpatory evidence. Exculpatory information can help a defendant even if it is not within the prosecutor's possession, custody, or control, but inculpatory information cannot harm the defendant if it is not within the prosecutor's possession, custody, or control. Thus, the prosecutor's obligation to produce "exculpatory information," R. 3:13-3(a), (b)(1), is not limited to items "within the possession, custody or control of the prosecutor," R. 3:13-3(b)(1)(C). Similarly, a prosecutor's constitutional obligation to provide exculpatory information "extends to documents of which it is actually or constructively aware, including documents held by other law enforcement personnel who are part of the prosecution team," Robertson, 438 N.J.Super. at 69, 102 A.3d 381, because they are "acting on the government's behalf in the case," Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ; see State v. Nelson, 155 N.J. 487, 498-99, 715 A.2d 281 (1998).
C.
Even if the BCPO were to be treated as having control over the State Police Lab, the trial court erred in finding a violation of Rule 3:13-3(b)(1)(C). That rule requires the prosecutor to provide the defendant with "results or reports ... of scientific tests or experiments." Ibid. Bless's July 25 draft report was not a final report, nor were its results the final results until it was reviewed and approved.
The trial court initially excluded the DNA evidence under the misapprehension that Bless's DNA report was final on July 25. The court's November 29 opinion found disclosure occurred "114 days after the report was finalized." The court erroneously assumed that "the DNA evidence had been processed and reported by July 25," that there was a "nearly four (4) month delay in providing defendant the DNA report," and that the delay must have been caused by "a lack of diligence by the State in seeking the DNA report from the State Police" Lab.
*185 In fact, as Bless's certification made clear, her July 25 draft report was not final on July 25. The draft report was not finalized and its results were not approved until it had been subject to technical peer review, approved by the NJSP DNA Technical Leader, and administratively reviewed by a Forensic Scientist III on November 8.
*1156 As our Supreme Court has noted in the context of psychological testing, " '[t]he peer review process is a method of quality control that ensures the validity and reliability of experimental research.' " State v. Henderson, 208 N.J. 208, 242, 27 A.3d 872 (2011) (citation omitted). The same is true regarding DNA testing. See State v. Harvey, 151 N.J. 117, 173-75, 699 A.2d 596 (1997). Peer review is employed to detect errors and ensure the reliability of DNA findings. See, e.g., Woods v. Sinclair, 764 F.3d 1109, 1126-27 (9th Cir. 2014) ; State v. Draughn, 950 So.2d 583, 596 (La. 2007). Testing an increased number of alleles similarly helps "ensure that a DNA profile matches only one individual." King, 569 U.S. at 443, 133 S.Ct. 1958. Reliability may also be enhanced by requiring review by a highly-experienced DNA technical leader, particularly where appropriate protocols are being developed for such more thorough testing.
Because peer review, review by the lab's technical leader, and increased allele testing are steps in the process of DNA analysis which correct inaccurate preliminary reports and results, it was appropriate to complete those quality control steps before disclosing the reports and results. To require the disclosure of unreviewed, unapproved draft reports risks false accusations and false exonerations based on incomplete testing procedures. Requiring disclosure of DNA reports only after the review and approval process is complete helps protect the accused as well as the State, and serves the cause of justice.
Thus, we reject the argument that the July 25 draft report had to be produced before those reviews and approvals were completed and the report and result were finalized. Only when the report *186 was reviewed and approved did the obligation to produce it arise under Rule 3:13-3(b)(1)(C) and Rule 3:13-3(f).
The trial court's initial misapprehensions might be excused because the BCPO, in its haste to file a motion within a day of receiving Bless's DNA report, did not attach a certification from the State Police Lab. Indeed, the prosecutor at the initial hearing conceded he did not know why the report supplied by the State Police Lab on November 16 was dated July 25. In excluding the DNA evidence, the court repeatedly stressed that there was no "adequate explanation from the State" for the delay in producing the July 25 report, and that "the State has failed to provide an adequate explanation for its failure to timely provide defendant with the DNA report 30 days in advance of trial."
However, on reconsideration, the prosecutor supplied his own and Bless's certifications, which explained that the July 25 draft report still had to be reviewed and approved, and that it was finalized on November 8 and produced a week later. Nonetheless, the court ruled that the certifications from Bless and the prosecutor did "not really inform the Court of anything new or anything that would justify the delay," and that there was still "no good explanation for the delay." Those rulings were erroneous because the certifications of Bless and the prosecutor provided a new and adequate explanation.
Reconsideration should be granted if "the [trial court] has expressed its decision based upon a palpably incorrect or irrational basis." State v. Puryear, 441 N.J.Super. 280, 294, 117 A.3d 1255 (App. Div. 2015) (citations omitted). Here, the trial court's initial decision was based on a palpably incorrect assumption that the draft report was a final report. Moreover, if a litigant brings " 'new or additional information to the Court's attention which it could not have provided on the first application, the Court should, in the interest of justice (and in the exercise of *1157 sound discretion), consider the evidence.' " Cummings v. Bahr, 295 N.J.Super. 374, 384, 685 A.2d 60 (App. Div. 1996) (citation omitted). The BCPO's certifications provided new information which it *187 did not know when it filed its motion. In these unusual circumstances, denial of reconsideration was an abuse of discretion. See id. at 389, 685 A.2d 60.
The trial court discounted "the increase in the review of the samples and the number of alleles and this new procedure," ruling it was "a problem for the state police lab choosing to introduce this new procedure in the midst of criminal justice reform and speedy trial." However, the introduction of procedures to improve and ensure the accuracy of DNA testing benefitted both defendants and the State. A court should not fault the State Police Lab for implementing procedures to assure accuracy even if they coincided with the implementation of the CJRA.
The State Police Lab adopted measures to take the CJRA into account. In her certification, Bless stated the State Police Lab had "case management requirements including Bail Reform and expedited cases which affect the prioritization of case file review."
The trial court inferred from the delay that defendant's case did not receive prioritized treatment. Defendant similarly argues that, had the BCPO made inquiry of the State Police Lab, his case might have been prioritized. Even if such inferences could be drawn, prioritizing defendant's case over other cases would delay the other cases, hardly a costless "remedy."
In any event, courts should consider discovery issues separately from speedy trial issues. In Dickerson, our Supreme Court held that "discovery sanctions must be distinguished" from the sanctions for violating the speedy trial statute, and that it is improper to impose the speedy trial statute's remedy of release to punish a discovery violation. 232 N.J. at 28, 177 A.3d 788. It is similarly improper to impose a discovery sanction based on a perceived failure to comply with the speedy trial statute.
Moreover, as the trial court acknowledged, "the processing of forensic evidence, such as DNA, can by its nature be complex and time-consuming." Indeed, the Joint Committee Report which led to the CJRA recognized that "DNA and other forensic evidence *188 can delay a case for six to nine months while results from testing are pending." Report of the New Jersey Supreme Court's Joint Committee on Criminal Justice [Joint Committee Report ] 77 (Mar. 10, 2014).[4] The delay here was within that span.
Most of the steps in processing the DNA evidence were not excessively long. The BCPO provided the eyeglasses and DNA swabs to the State Police Lab only two weeks after the shootings, and the lab processed them the next day and took a swab from the eyeglasses a week later. About three months passed before the eyeglasses were assigned to Bless for analysis, but neither defendant nor the trial court relied on that delay. Bless prepared her draft report five days after being assigned, and the technical peer review was initiated two weeks later.
The trial court based its ruling on the delay after July 25. However, the certifications explained that was primarily due to the need for approval by the State Police Lab's DNA technical leader that took *1158 three months because of her supervisory responsibilities and her heavy workload as the only lab employee qualified to interpret DNA results involving a mixture of contributors until approved scientific procedures were developed for the lab's new method of analysis. Once the DNA technical leader's approval was received, the technical peer review was completed that day, and the final administrative review was completed in five days.
The time needed for approval by the State Police Lab's DNA technical leader, and for the entire technical, peer, and administrative review process, was not short. However, the certifications made clear the time was necessary to ensure that the proper steps were taken to prepare a final, accurate DNA report. Moreover, the prosecutor represented that the State Police Lab had since obtained approved protocols, that processing has gotten "back to normal now," and that such a delay "will not happen again."
*189 Regardless, the certifications adequately explained why the delay was necessary to ensure the accuracy of the DNA report and results. When that was completed on November 8, the State Police Lab emailed the report on November 16, and the BCPO provided it to defendant that day under Rule 3:13-3(f).
Defendant argues it should not have taken from November 8 to 16 to digitize and email the final report to the BCPO. However, Bless explained that was due to clerical staff shortages. In any event, that eight-day delay could not justify the court's drastic sanction of exclusion of the DNA evidence.
D.
The BCPO's production of the DNA report was not the end of the story, because the BCPO sought to use it as a basis for expert testimony. Under Rule 3:13-3(b)(1)(I), the State must provide discovery of the
names and addresses of each person whom the prosecutor expects to call to trial as an expert witness, the expert's qualifications, the subject matter on which the expert is expected to testify, a copy of the report, if any, of such expert witness, or if no report is prepared, a statement of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. Except as otherwise provided in R. 3:10-3, if this information is not furnished 30 days in advance of trial, the expert witness may, upon application by the defendant, be barred from testifying at trial.
The BCPO provided the final DNA report twelve days before the scheduled trial date. Moreover, the BCPO did not have the full DNA packet from the State Police Lab, and had not yet produced the other expert information required by Rule 3:13-3(b)(1)(I). The BCPO produced that information and the DNA packet to defendant by December 19.
The BCPO asked for a postponement of trial to allow it to produce that information sufficiently in advance of the new trial date to give defendant the opportunity to analyze the DNA information and to respond with his own DNA expert. Rule 3:13-3(f) provides:
*190 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material *1159 not disclosed, or it may enter such other order as it deems appropriate.
"An adjournment or continuance is a preferred remedy where circumstances permit." State v. Clark, 347 N.J.Super. 497, 509, 790 A.2d 945 (App. Div. 2002). Here, the circumstances permitted a continuance of the trial date. Defendant does not claim trial had previously been extended, and the trial date was around the CJRA's 180-day period. The BCPO produced the DNA report to defendant almost two weeks before the trial date, offered to provide the expert information and full DNA packet as soon as the BCPO received it, and provided them to defendant within five days of our order. The BCPO's requested sixty-day continuance would have provided defendant with more than thirty days to analyze and respond to the DNA evidence.
Nonetheless, the trial court refused to grant a continuance of trial, and instead prohibited the State from introducing any DNA evidence. However, "the sanction of preclusion is a drastic remedy and should be applied only after other alternatives are fully explored[.]" State v. Scher, 278 N.J.Super. 249, 272, 650 A.2d 1012 (App. Div. 1994) ; see State v. Montijo, 320 N.J.Super. 483, 491-92, 727 A.2d 533 (Law Div. 1998). Indeed, "it is axiomatic that '[b]efore invoking the ultimate sanction of barring a witness, the court should explore alternatives.' " State v. Dimitrov, 325 N.J.Super. 506, 511, 739 A.2d 1008 (App. Div. 1999) (citation omitted); see Zaccardi v. Becker, 88 N.J. 245, 253, 440 A.2d 1329 (1982) ("although it is the policy of the law that discovery rules be complied with, it is also the rule that drastic sanctions should be imposed only sparingly").
Here, continuance not exclusion was the appropriate remedy.
Exclusion of the testimony on the ground that the discovery rights of defendant were violated was not warranted. Mindful of the general policy of admissibility, the judge should have availed himself of other means of protecting defendant from surprise. Ample protection of defendant's interest could have been achieved *191 by according defense counsel an opportunity to [analyze the new evidence], by granting a brief continuance, or by some other procedure which would have permitted defense counsel to prepare to meet the evidence.
[ State v. Lynch, 79 N.J. 327, 335-36, 399 A.2d 629 (1979) (quoting State v. Moore, 147 N.J.Super. 47, 51, 370 A.2d 531 (App. Div. 1977) ). ]
Under Rule 3:13-3(b)(1)(I), "[f]actors that should result in permitting the expert to testify include '(1) the absence of any design to mislead, (2) the absence of the element of surprise if the evidence is admitted and (3) the absence of prejudice which would result from the admission of evidence.' " State v. LaBrutto, 114 N.J. 187, 205, 553 A.2d 335 (1989) (citations omitted). Those same factors are considered under Rule 3:13-3(f). State v. Zola, 112 N.J. 384, 418, 548 A.2d 1022 (1988).
Those factors all favored granting a continuance rather than excluding the DNA evidence. First, defendant did "not argue that the State intended to mislead him by not providing all of the discovery timely." State v. Wolfe, 431 N.J.Super. 356, 363, 69 A.3d 164 (App. Div. 2013). Rather, the State Police Lab's completion of the report was delayed for the straightforward reasons set forth in the certifications, and the BCPO immediately supplied it to defendant.
Second, the requested sixty-day continuance of trial would have given defendant as much or more time to respond to the DNA
*1160 evidence as if it had been produced thirty days before trial, thus "protecting defendant from surprise." Lynch, 79 N.J. at 336, 399 A.2d 629 (quoting Moore, 147 N.J.Super. at 51, 370 A.2d 531 ); see Zola, 112 N.J. at 418-19, 548 A.2d 1022 (finding no unfair surprise).
Third, and "[s]ignificantly, defense counsel did not claim any prejudice." Lynch, 79 N.J. at 335, 399 A.2d 629. " 'Prejudice' in this context refers not to the impact of the testimony itself, but the aggrieved party's inability to contest the testimony because of late notice." State v. Heisler, 422 N.J.Super. 399, 415, 29 A.3d 320 (App. Div. 2011). Defense counsel did not claim the delay had caused the loss of evidence or otherwise prevented her from *192 contesting the DNA evidence. Rather, she complained defendant would have to hire an expert, but "the costs of [a defendant's] ... expert witness" is not cognizable prejudice. State v. Prickett, 240 N.J.Super. 139, 144, 572 A.2d 1166 (App. Div. 1990). A continuance would have allowed defendant to obtain an expert and avoid undue prejudice. See State v. Koedatich, 112 N.J. 225, 319, 548 A.2d 939 (1988) ; see also State v. Utsch, 184 N.J.Super. 575, 580, 446 A.2d 1236 (App. Div. 1982).
Furthermore, the trial court failed to address whether that DNA evidence "was so important that its exclusion [would have] an effect on the fairness of the trial." See State v. Williams, 214 N.J.Super. 12, 22, 518 A.2d 234 (App. Div. 1986). The trial of criminal cases involves "important interests" of the State, the alleged victims, and the public, not just "those of defendant alone." State v. Gallegan, 117 N.J. 345, 353, 567 A.2d 204 (1989) (quoting State v. Laganella, 144 N.J.Super. 268, 287, 365 A.2d 224 (App. Div. 1976) ).
The prosecutor pointed out that defendant was not arrested at the scene of the shootings, that no gun was ever recovered, and that there was no video of defendant committing the shootings. The prosecutor noted that, without the DNA evidence, the State's case would rely entirely on eyewitness testimony, which is often attacked and is subject to demanding jury instructions. See, e.g., State v. Henderson, 208 N.J. 208, 218-19, 231-37, 27 A.3d 872 (2011) ; Model Jury Charge (Criminal), "Identification: In-Court and Out-Of-Court Identifications" (2012). The prosecutor insisted the DNA evidence linking defendant to the scene of the crime was "extraordinarily probative" and "extraordinarily important to the State."
"We recognize that trial courts are vested with the discretion to fashion an appropriate sanction for a violation of discovery obligations." Richardson, 452 N.J.Super. at 137, 171 A.3d 1270 (citing State v. Dabas, 215 N.J. 114, 141, 71 A.3d 814 (2013) ). Nevertheless, under these circumstances, the trial court should have ordered a continuance of trial which would have *193 allowed the State to present, and defendant to respond to, this important DNA evidence. "A trial court, in its discretion, has wide latitude to order a brief continuance and give defendant time to investigate key evidence that surfaces during trial" or before trial. State v. Smith, 224 N.J. 36, 51, 128 A.3d 1077 (2016). By declining to do so, and instead excluding that evidence, the court abused its discretion.
Importantly, the CJRA's speedy trial statute did not preclude a continuance of trial. "If the trial does not commence within" 180 days of indictment, not counting excludable time, a defendant may be entitled to the speedy trial statute's remedy: that "the eligible defendant shall be released from jail." N.J.S.A. 2A:162-22(a)(2)(a). The State took the position that if the trial court denied its motion for excludable time, the State was "still asking *1161 for a continuance and if we have to release Mr. Washington so be it." As the trial court acknowledged, the State understood "that if an extension [of trial] is granted, defendant could be released pending his trial under the Speedy Trial Act. The State is willing to accept that potential outcome." Thus, the State's request for continuance did not attempt to prevent the remedy for a speedy trial violation from being implemented if otherwise justified.[5]
Thus, the speedy trial statute was not a basis for denying the continuance. Moreover, as discussed below, it was subsequently determined that there was excludable time, and that the speedy trial statute did not require defendant's release during the period of the continuance sought by the State.
Defendant argued that if he was released under the speedy trial statute, he would be extradited to Pennsylvania on a detainer, prejudicing his ability to obtain a speedy disposition of his New Jersey charges. The trial court stated that "further delay would *194 prejudice defendant who has a right to have his case decided in a prompt manner." Because defendant was not released to Pennsylvania custody, we need not resolve whether a continuance implicates the speedy trial statute if it results in the release of a defendant on a detainer to another State. See N.J.S.A. 2A:162-22(b)(1)(e).
Accordingly, we reverse the trial court's November 28 and 29 and December 6 orders to the extent they excluded the DNA evidence and denied a continuance of trial.
III.
We next address the State's appeal of the trial court's denial of its request for excludable time under N.J.S.A. 2A:162-22(b)(1)(g). "The question of whether a particular period or motion is excludable under N.J.S.A. 2A:162-22(b) is a question of law that appellate courts review de novo." State v. Forchion, 451 N.J.Super. 474, 482, 168 A.3d 1222 (App. Div. 2017). "In contrast, we apply a deferential standard of review to the fact-finding concerning the amount of excludable time. Thus, we will not disturb the trial court's findings as to the amount of excludable time so long as those findings are supported by 'sufficient credible evidence in the record.' " Ibid. (quoting State v. Brown, 216 N.J. 508, 517, 83 A.3d 45 (2014) ).
The speedy trial statute provides that "an eligible defendant subject to pretrial detention as ordered by a court pursuant to" N.J.S.A. 2A:162-18 or -19 "shall not remain detained in jail for more than 180 days on that charge following the return or unsealing of the indictment, whichever is later, not counting excludable time for reasonable delays as set forth in subsection b. of this section, before commencement of the trial." N.J.S.A. 2A:162-22(a)(2)(a). "The statute lists thirteen periods of excludable time" in N.J.S.A. 2A:162-22(b). Robinson, 229 N.J. at 56, 160 A.3d 1. Those excludable periods are also discussed in the speedy trial rule, Rule 3:25-4(i).
*195 Forchion, 451 N.J.Super. at 479, 168 A.3d 1222. In determining what time is excludable, courts must consider both the speedy trial statute and the speedy trial rule.
A.
The State relied on the provision of the speedy trial statute requiring the *1162 court to "exclude[ ] in computing the time in which a case shall be indicted or tried ... (g) On motion of the prosecutor, the delay resulting when the court finds that the case is complex due to the number of defendants or the nature of the prosecution[.]" N.J.S.A. 2A:162-22(b)(1). The speedy trial rule explains that "the court ordinarily should grant the motion only when the case involves more than two defendants, novel questions of fact or law, numerous witnesses who may be difficult to locate or produce, or voluminous or complicated evidence." R. 3:25-4(i)(7)(C).
The trial court did not abuse its discretion in rejecting the State's initial motion claiming this was a complex case. The prosecution involved "a single defendant, a two-count indictment," and a single shooting episode. The State did not claim the case involved "novel questions of fact or law," or that there were "numerous witnesses who may be difficult to locate or produce." Ibid. In addition to the eyewitnesses, the prosecutor said there were "possibly a half a dozen police officers" and one or two "witnesses concerning the DNA." Even with the DNA evidence, the prosecutor estimated it would take "four to six days" to try the case, exclusive of jury selection. The prosecutor noted the DNA evidence would require the provision of expert reports, expert resumes, and the DNA packet of notes and charts, but he did not claim this evidence was "voluminous." Ibid.
Instead, the prosecutor originally argued this was a complex case because the DNA evidence involved advanced scientific testing. The trial court noted DNA evidence could be "somewhat complicated evidence," but found that "DNA is involved in many criminal cases," and that "[t]he presence of DNA evidence alone would not make this a complex case." We agree.
*196 "[C]omplicated evidence" may be the basis of a complex-case motion, ibid., but complicated evidence justifies excluding time only if the resulting complexity requires such additional time for trial preparation that it is unreasonable to expect trial preparation to be completed within the 180-day speedy-trial period. Under Rule 3:25-4(i)(7)(B), the trial court may grant a complex case motion
only if (i) the prosecutor establishes that due to the complexity of the case it is unreasonable to expect adequate preparation for pretrial proceedings or the trial itself within the time periods set forth in this Rule and (ii) the court finds that the interests of justice served by granting the delay outweigh the best interests of the public and the defendant in a speedy trial.
The State must "include in the motion the specific factual basis justifying the delay and the length of the delay sought." R. 3:25-4(i)(7)(A).
The State's initial motion, arguing that DNA evidence was complicated, failed to establish that its complexity made it "unreasonable to expect adequate preparation" within the standard speedy trial period under subsection (i) of Rule 3:25-4(i)(7)(B). Because the State failed to establish the first prerequisite, the trial court did not have to engage in the second-step balancing under subsection (ii). Thus, we affirm the trial court's November 28 order denying excludable time.
On reconsideration, the prosecutor argued that the DNA evidence was particularly complex because the State Police Lab changed its standards for allele testing. As discussed above, the procedures needed to implement that change caused delay in the production of the DNA report. That posed a closer issue. The State tried to analogize to federal cases under the Speedy Trial Act, *1163 18 U.S.C. §§ 3161 - 3174. We have looked to that "analogous federal statute for guidance in interpreting the speedy trial provisions of the CJRA." Forchion, 451 N.J.Super. at 480, 168 A.3d 1222. Our Supreme Court's rules committee used "the federal statute" as a basis for drafting the speedy-trial rule's complex-case provision. Report of the Supreme Court Committee on Criminal Practice on Recommended Court Rules to Implement the Bail *197 Reform Law, Part II: Pretrial Detention & Speedy Trial [Rules Committee Report II ] 69 (May 12, 2016).[6]
The State cites federal cases relying on subparagraph (A) of 18 U.S.C. § 3161(h)(7), formerly § 3161(h)(8). Subparagraph (A) excludes
[a]ny period of delay resulting from a continuance granted by any judge ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.
[ 18 U.S.C. § 3161(h)(7)(A).]
However, our Legislature did not include a stand-alone ends-of-justice exclusion in the speedy trial statute.
Subparagraph (B) of the federal provision lists factors "which a judge shall consider in determining whether to grant a continuance under subparagraph (A)." 18 U.S.C. § 3161(h)(7)(B). One of those factors is
[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
[ 18 U.S.C. § 3161(h)(7)(B)(ii).]
Thus, subparagraph (B) contains language that also appears in N.J.S.A. 2A:162-22(b)(1)(g) and Rule 3:25(i)(7)(C). Taken together, subparagraphs (A) and (B) of the federal provision bear some resemblance to subparagraphs (ii) and (i) of Rule 3:25-4(i)(7)(B).
However, there is a crucial difference. Under New Jersey's speedy trial provisions, the court must find that a case is complex, that its complexity makes it unreasonable to expect preparation within the standard speedy trial period, and that the interests of justice outweigh the interest in a speedy trial. Rule 3:25-4(i)(7)(B). Under the federal provision, a court may find that a case is complex and that its complexity makes it unreasonable to expect preparation within the standard speedy trial period under subparagraph (B), but, even without such findings, a federal court *198 can grant excludable time if the ends of justice outweigh the interest in a speedy trial under subparagraph (A) of 18 U.S.C. § 3161(h)(7).
That is what occurred in the federal cases cited by the State. The federal courts did not find either the case or the DNA evidence was complex. Instead, they relied solely on subparagraph (A) to grant ends-of-justice continuances. United States v. Villarreal, 707 F.3d 942, 955-56 (8th Cir. 2013), and United States v. Drapeau, 978 F.2d 1072, 1073 (8th Cir. 1992). Thus, those cases provide no guidance on whether defendant's case was "complex." N.J.S.A. 2A:162-22(b)(1)(g). Moreover, unlike the federal statute, our speedy trial rule expressly states a complex-case motion may be justified if "the case involves more than two defendants, novel questions *1164 of fact or law, numerous witnesses who may be difficult to locate or produce, or voluminous or complicated evidence." R. 3:25-4(i)(7)(C).
On reconsideration, the State presented additional evidence which indicated both that the delay resulting from the changes in DNA testing procedures complicated the DNA evidence's analysis and that the resulting complexity made it "unreasonable to expect adequate preparation" within the 180-day time period. R. 3:25-7(i)(7)(B)(i). The State's additional evidence required the trial court to reconsider its determination that the case was not complex under N.J.S.A. 2A:162-22(b)(1)(g). The court failed to do so. The court also did not reconsider whether "the interests of justice served by granting the delay outweigh the best interests of the public and the defendant in a speedy trial." R. 3:25-7(i)(7)(B)(ii); see R. 3:25-7(i)(7)(D) (requiring the court to "set forth on the record ... the findings as required under subparagraph (7)(B)(ii)").
We need not resolve the issue under subparagraph (i), or remand for a finding under subparagraph (ii) of Rule 3:25-4(i)(7)(B), or for review by the criminal presiding judge under Rule 3:25-4(i)(7)(E). As discussed below, the entire time period the State sought to exclude under the complex-case exception was *199 subsequently excluded under the pending-motion exclusion. Accordingly, we vacate the December 6 order to the extent it denied reconsideration on the complex case issue.
B.
At oral argument, the State's appellate counsel suggested the State could have moved for excludable time under N.J.S.A. 2A:162-22(b)(1)(f). That subsection requires courts to exclude "[t]he time resulting from exceptional circumstances including, but not limited to, a natural disaster, the unavoidable unavailability of an eligible defendant, material witness or other evidence, when there is a reasonable expectation that the eligible defendant, witness or evidence will become available in the near future." N.J.S.A. 2A:162-22(b)(1)(f) (emphasis added); see R. 3:25-4(i)(6).
That subsection was arguably applicable to the situation here. However, because the State did not make a motion to exclude the time under N.J.S.A. 2A:162-22(b)(1)(f), we do not address whether the State satisfied the requirements of that provision. See State v. Witt, 223 N.J. 409, 418-19, 126 A.3d 850 (2015).
C.
The State also invoked another subsection of the speedy trial statute, which states: "The failure by the prosecutor to provide timely and complete discovery shall not be considered excludable time unless the discovery only became available after the time established for discovery." N.J.S.A. 2A:162-22(b)(2). However, that subsection is not in the list of the "periods [that] shall be excluded in computing the time in which a case shall be indicted or tried." N.J.S.A. 2A:162-22(b)(1). Rather, it is a separate limit on those periods of excludable time.
This limit recognizes that if the prosecutor has the complete discovery materials available during the period set for discovery, but fails to produce them during that period, that failure should not result in excludable time. However, if some of the discovery at *200 issue was not available during the discovery period, but only became available thereafter, it may be appropriate to grant excludable time under one of the listed exclusions. For example, if the prosecutor is unable to provide timely and complete discovery of evidence because of *1165 its temporary but unavoidable unavailability, whether that results in excludable time may depend on whether the evidence only became available after the time established for discovery. See N.J.S.A. 2A:162-22(b)(1)(f), (b)(2).
The DNA expert evidence did not become available until after the time established for discovery of expert evidence. See R. 3:13-3(b)(1)(I). Thus, N.J.S.A. 2A:162-22(b)(2) did not preclude the granting of excludable time if authorized by a listed exclusion provision. However, it is not itself a basis for exclusion.
IV.
Defendant's appeal contends the trial court erred in granting excludable time in its December 12 and 22 orders. We are aided in our review by the court's statement of reasons requested in our December 23 order.
On December 12, the trial court on its own motion issued an order ruling the period between December 6 and December 14 was excludable time. The order mistakenly stated that "the Court finds this a complex case," citing N.J.S.A. 2A:162-22(b)(1)(g).[7] In its subsequent statement of reasons, the court explained this language was included in error. The court vacated that order and replaced it with a revised order stating the period between its December 6 grant of a stay and the December 14 completion of briefing on the State's emergent motion was excludable time *201 under N.J.S.A. 2A:162-22(b)(1)(c)"[t]o allow time for the disposition of a motion for Leave to Appeal and Emergent Relief."
On December 22, the trial court on its own motion ruled that the period between December 14, 2017, and February 28, 2018, was excludable time under N.J.S.A. 2A:162-22(b)(1)(c) to allow disposition of the pending appeal. In its subsequent statement of reasons, the court explained it treated the period between our December 14 grant of the State's emergent motion for leave to appeal and the approximately thirty days after the conclusion of briefing on the State's appeal as excludable time "to allow time for a decision from the Appellate Division." The court revised its order to exclude the period from December 14 to February 23.
We agree that the various periods between December 6 and the receipt of our disposition of the interlocutory appeal were excludable time, under N.J.S.A. 2A:162-22(b)(1)(c), N.J.S.A. 2A:162-22(b)(1)(l), or both.
Courts must exclude "[t]he time from the filing to the final disposition of a motion made before trial by the prosecutor or the eligible defendant." N.J.S.A. 2A:162-22(b)(1)(c) ; see Rule 3:25-4(i)(3). "[T]he necessity of, and the merits of, the motions are not relevant ... absent some abuse, which has not been argued or demonstrated here." Forchion, 451 N.J.Super. at 483, 168 A.3d 1222.
Courts must also exclude "[t]he time for other periods of delay not specifically enumerated if the court finds good cause for the delay." N.J.S.A. 2A:162-22(b)(1)(l). "[T]his provision shall be narrowly construed." R. 3:25-4(i)(12).
First, the period from December 6 to 7 was excludable time. On December 6, the State orally moved for a stay of trial and submitted a form of order, which the court *1166 signed, granting a stay of trial through December 7.
N.J.S.A. 2A:162-22(b)(1)(c) refers to "the filing" of the motion. Rule 3:25-4(h)(3)(A) refers to "the filing of the notice of motion." The filing of written motions aids in the calculation of the excludable *202 time. Nonetheless, the rules of court permit oral motions if they are "made during a trial or hearing," or if "the court permits it to be made orally." R. 1:6-2(a). Where a proper oral motion is made and the court does not resolve it on the same day, granting excludable time might fall within the spirit if perhaps not the letter of those speedy trial provisions. However, we need not resolve that issue, because the trial court ruled on the State's December 6 oral motion immediately.
Regardless, there was good cause for the delay of trial under N.J.S.A. 2A:162-22(b)(1)(l). Trial could not occur on December 6 or 7 because the trial court had stayed the trial. Moreover, the stay was appropriate to allow the State to seek appellate review of the court's orders, particularly the exclusion of its DNA evidence.
Second, the period from December 7 to 14 was excludable time. On December 7, the State filed an emergent application with this court, which we granted that day, ordering the State to file an emergent motion by December 11 and staying the trial pending disposition of that motion. On December 11, the State filed an emergent motion for leave to appeal and for a stay, which we resolved on December 14.
We hold requests for emergent relief in this court constitute a "motion" under N.J.S.A. 2A:162-22(b)(1)(c). Because the emergent application begins the motion process, the excludable time includes the period from the filing of the emergent application until its denial or, if we grant the right to file an emergent motion, until the disposition of the emergent motion. See Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 2:8-1 (2018).
In any event, there was good cause for the delay of trial under N.J.S.A. 2A:162-22(b)(1)(l). Trial could not occur between December 7 and 14 because we had stayed the trial to allow the State to seek appellate review.
Third, the period from December 14 to our disposition of the interlocutory appeal is excludable time. On December 14, we *203 granted leave to appeal and stayed trial pending disposition of the appeal.
We hold an interlocutory appeal constitutes "a motion" under N.J.S.A. 2A:162-22(b)(1)(c). The Joint Committee Report's recommendation 14 proposed that excludable time include the period from "[t]he filing, until final disposition, of pretrial motions by the State, such as evidentiary motions and interlocutory appeals, if granted." Id. at 87. Recommendation 14 also recommended excluding the period from "[t]he filing, until final disposition, of pretrial motions by a defendant, such as motions to suppress evidence, motions to dismiss the indictment, motions for severance, motions for change of venue ... evidentiary motions, and interlocutory appeals." Ibid. Based on recommendation 14, the Senate and the General Assembly adopted N.J.S.A. 2A:162-22(b)(1)(c)'s language excluding "[t]he time from the filing to the final disposition of a motion made before trial by the prosecutor or the [defendant]." E.g., Senate Budget And Appropriations Committee Statement To S. 946 at 1-2 (June 5, 2014); Assembly Judiciary Committee Statement To A. 1910 at 1-2 (June 12, 2014). The examples given by the Joint Committee Report presumably guided the Legislature, though it did not include them in the statute. Excluding the "delay resulting from any interlocutory appeal" also accords with the federal Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(C).
*1167 In any event, there was good cause for the delay of trial under N.J.S.A. 2A:162-22(b)(1)(l). Trial could not occur during the interlocutory appeal because we have stayed the trial to allow the State to seek appellate review.
Therefore, we agree with the trial court that the period between December 6 and our disposition of this interlocutory appeal is excludable time. Although the trial court gave N.J.S.A. 2A:162-22(b)(1)(c) as the basis of its ruling, we may also affirm under N.J.S.A. 2A:162-22(b)(1)(l). "It is a longstanding principle underlying appellate review that 'appeals are taken from orders and judgments and not from opinions ... or reasons given for the *204 ultimate conclusion.' " State v. Scott, 229 N.J. 469, 479, 163 A.3d 325 (2017) (citation omitted). "[B]ecause an appeal is taken from a trial court's ruling rather than reasons for the ruling, we may rely on grounds other than those upon which the trial court relied." State v. Adubato, 420 N.J.Super. 167, 176, 19 A.3d 1023 (App. Div. 2011).
Defendant argues the trial court lacked jurisdiction to enter its December 12 and 22 orders once the State filed its motion for leave to appeal on December 11. With certain exceptions, "the supervision and control of the proceedings on appeal or certification shall be in the appellate court from the time the appeal is taken or the notice of petition for certification filed." R. 2:9-1(a).
However, "the trial court's continuing jurisdiction [is not] in any way stayed by the filing of a motion for leave to appeal unless either it or the appellate court grants a stay pending the disposition of the motion." Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 2:9-1 (2018). Although our December 7 order stayed the commencement of trial, it did not prevent the trial court from exercising its jurisdiction to perform other functions. Thus, the court had jurisdiction to enter its December 12 order.
Once we granted the State's motion for leave to appeal on December 14, an appeal was taken. Waste Mgmt. of N.J., Inc. v. Morris Cty. Mun. Utils. Auth., 433 N.J.Super. 445, 450, 80 A.3d 1169 (App. Div. 2013). Nonetheless, a trial court can continue to exercise jurisdiction to determine whether to release a defendant. R. 2:9-1(a) (citing R. 2:9-4 ("Pending appeal to the Appellate Division, bail may be allowed by the trial court[.]") ). Under the speedy trial provisions, a defendant who has been "detained in jail for more than 180 days on that charge following the return or unsealing of the indictment, whichever is later, not counting excludable time," generally "shall be released from jail." N.J.S.A. 2A:162-22(a)(2)(a). Thus, the calculation of excludable time is part of the determination of whether a defendant should be released.
*205 Therefore, after a motion for leave to appeal is granted, a trial court retains jurisdiction to issue an order excluding the time from the grant of leave to appeal until the disposition of the appeal. To rule otherwise would necessitate either pre-grant hypothetical rulings by trial courts, or post-grant remand motions to this court.
Regardless, our December 14 order granting leave to appeal provided that issues concerning defendant's detention or release would continue to be handled by the trial court: "The State has not asked us to stay defendant's release, and we do not stay his release at the time and in the manner provided by law." Our December 14 order was broad enough to permit the trial court to determine whether the time after our December 14 order was excludable time in order to decide whether the law required defendant to be released.
Accordingly, we affirm the trial court's December 12 and 22 orders, modified to find excludable time under *1168 N.J.S.A. 2A:162-22(b)(1)(c) or (l) or both from December 6 to the date our opinion resolving this appeal is received by the trial court. Together with the court's unchallenged November 28 order granting ten days of excludable time, these rulings provided sufficient excludable time that defendant has no general right to release under N.J.S.A. 2A:162-22(a)(2)(a) until approximately a week after receipt of our opinion.
Therefore, we need not address whether the trial court erred by not ruling on the State's argument that defendant should not be released and that the time to commence trial should be extended under N.J.S.A. 2A:162-22(a)(2)(a). See R. 3:25-4(c)(2)(4). The issue of whether defendant should be released or detained pending trial under that provision is committed to the trial court and we express no opinion on the issue.
Affirmed in part, reversed in part, and vacated in part in A-1780-17. Affirmed as modified in A-2051-17. We remand and do not retain jurisdiction.

"Many of the patterns found in DNA are shared among all people, so forensic analysis focuses on 'repeated DNA sequences scattered throughout the human genome,' known as 'short tandem repeats' (STRs)." Maryland v. King, 569 U.S. 435, 443, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013). "The alternative possibilities for the size and frequency of these STRs at any given point along a strand of DNA are known as 'alleles,' and multiple alleles are analyzed in order to ensure that a DNA profile matches only one individual." Ibid.; see State v. Sterling, 215 N.J. 65, 103, 71 A.3d 786 (2013).

The certifications failed to include the language required by Rule 1:4-4(b). The prosecutor offered to immediately provide certifications including that language. On December 18, the State provided replacement certifications compliant with Rule 1:4-4(b). In any event, the trial court ruled as if the certifications were valid, and defendant does not claim we should do otherwise.

The BCPO provided defendant with the full DNA packet, lab reports, and curriculum vitae of Bless and another forensic scientist by December 19.

Available at, https://www.judiciary.state.nj.us/courts/assets/criminal/finalreport3202014.pdf.

Our December 14 order noted the State's position before the trial court, and stated: "The State has not asked us to stay defendant's release, and we do not stay his release at the time and in the manner provided by law." Based on the existing calculation of excludable time by the trial court, we believed defendant would "not be held in New Jersey custody awaiting this appeal."

Available at https://www.judiciary.state.nj.us/notices/2016/n160516a.pdf.

The trial court also mistakenly stated that it excluded the time "[u]pon the State's motion," and that "defendant has consented to the request." In fact, the court issued these orders sua sponte without prior notice to the parties. Defendant has not argued in his brief that the court erred in entering the order sua sponte, and we express no opinion on the issue.