**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4459-17T3

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

MAWULDA PINKSTON,

     Defendant-Respondent.

_____

Argued December 19, 2018 – Decided May 30, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment Nos. 16-07-0103 and 17-03-0041.

Omari S. Reid, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Omari S. Reid, of counsel and on the brief).

Alicia J. Hubbard, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Alicia J. Hubbard, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from an April 10, 2018 order imposing sanctions, including the dismissal of an indictment, based on the State's failure to make timely discovery in two pending criminal cases, which had been consolidated for trial, against defendant Mawulda Pinkston. We affirm in part, reverse in part, and remand for further proceedings.

I.

Defendant was charged with various drug offenses and arrested on June 27, 2015, as the result of a New Jersey State Police investigation during which a confidential informant allegedly bought controlled dangerous substances from defendant on five separate occasions. The police seized two cellphones from defendant at the time of his arrest. Approximately three-and-a-half months later, the State sent defendant a letter concerning the charges and a disc containing initial discovery.

On July 6, 2016, over one year after his arrest, a grand jury returned an indictment charging defendant with second-degree conspiracy to distribute cocaine, N.J.S.A. 2C:5-2, 2C:35-5(a)(1) (count one); first-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1), (b)(1), (c) (count two); third-degree distribution of cocaine within one thousand feet of school property, N.J.S.A.

2C:35-7(a) (count three); second-degree distribution of cocaine within five hundred feet of certain public property, N.J.S.A. 2C:35-7.1(a) (count four); and third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count five). Defendant was arraigned on July 18, 2016.[1]

On March 7, 2017, a grand jury returned a second indictment charging defendant with a single count of third-degree witness tampering, N.J.S.A. 2C:28-5(a), for contacting the confidential informant involved in his drug case and attempting to dissuade the informant from testifying.[2] At the April 10, 2017 arraignment on the indictment, the State did not provide defendant with discovery on the witness tampering charge, but represented to the court that the discovery would be supplied to defendant.[3]

---

[1] The State has not provided the transcript of defendant's arraignment on the drug charges. See R. 2:5-4(a).

[2] The confidential informant told police defendant attempted to contact him at his workplace on July 22, 2016, and called him on his cellphone the following day and attempted to dissuade him from testifying against defendant. The informant called defendant on July 25, 2016, and the police recorded that call.

[3] The State has not provided the transcript of the April 10, 2017 arraignment. See R. 2:5-4(a). We discern the facts concerning the arraignment from the representations of counsel at other proceedings for which transcripts have been provided and the trial court's findings, which the parties do not dispute.

A-4459-17T3

In September 2017, a new deputy attorney general took over the prosecution of defendant's cases. The court held a pretrial conference and plea cutoff proceeding in the drug case on October 16, 2017. Defendant expressed uncertainty regarding whether to proceed to trial and the court gave defendant a week to consider his decision. On October 23, 2017, defendant appeared before the court and rejected the State's plea offer; the State offered to recommend that defendant receive a sentence not to exceed fifteen years with a seventy-five month period of parole ineligibility in exchange for his plea of guilty to the first-degree distribution charge.[4] The State's plea offer also included its commitment to recommend dismissal of the witness tampering charge.

The pretrial memorandum, that was signed by defendant, his counsel and the deputy attorney general, and entered by the court, expressly stated that "All Pretrial Discovery is complete."[5] The pretrial memorandum also provided that,

---

[4] The State has not provided the transcripts of either the October 16 or October 23, 2017 proceedings. See R. 2:5-4(a). We discern the facts concerning the proceedings from the representations of counsel in other proceedings for which transcripts have been provided and the trial court's findings, which are not disputed.

[5] The pretrial memorandum noted that the State would provide defendant with a copy of a formal order dismissing charges against the confidential informant. The State's compliance with this provision of the pretrial memorandum is not at issue.

"except in extraordinary circumstances, the filing of [the] [m]emorandum ends all plea negotiations, and no further bargaining will take place. Any subsequent plea of guilty will be without a plea recommendation." The court scheduled November 16, 2017, for the commencement of jury selection for the trial on the drug charges.

On November 14, 2017, two days before jury selection was to begin, the State requested a trial adjournment due to purported witness availability issues. The trial court held a telephone conference on November 15, 2017, accepted the State's representation it had witness availability issues and granted the State's adjournment request. The court rescheduled the trial for February 27, 2018.

On November 15, 2017, hours after the court granted the State's adjournment request, the State filed a motion to consolidate the drug and witness tampering cases for trial. The deputy attorney general did not disclose the State's planned filing of the consolidation motion during the adjournment telephone conference with the court.

The State's representation in the October 23, 2017 pretrial memorandum that discovery was complete proved to be inaccurate and disingenuous. On November 15, 2017, the State first produced lab notes related to the drug case. On November 21, 2017, unbeknownst to defendant and the judge who conducted

A-4459-17T3

the pretrial conference and plea cutoff proceeding and was scheduled to try the drug case, the State obtained two search warrants from another judge for the cellphones that were seized from defendant more than two years earlier during his June 2015 arrest.[6] The deputy attorney general later admitted she knew prior to the October 23, 2017 pretrial conference and plea cutoff proceeding that the State planned to obtain the search warrants for the phones, and that she did not disclose the State's intention to the court or defendant during that proceeding. She nonetheless signed the pretrial memorandum stating all discovery in the drug case was complete.

Police executed the warrants and downloaded information from the phones on or before December 18, 2017, but the State did not provide the information to defendant at that time. Instead, the State waited until February 6, 2018, three weeks before the scheduled trial date, to first advise defendant that the warrants had been sought and provide defendant with the information downloaded from the phones.

---

[6] In a later proceeding, the judge who had handled the proceedings in the two matters stated that he was not available to consider the search warrant applications on the day the warrants were issued, and did not know the State sought or obtained the search warrants until February 6, 2018.

A-4459-17T3

Confronted in November 2017 with the State's motion to consolidate the drug and witness tampering cases, defendant's counsel sent a written request for discovery in the witness tampering case on November 21, 2017. Prior to that time, defendant had not received any discovery in that case, and his counsel had not requested any discovery because she believed, based on her communications with the State, the witness tampering case would be disposed of separately after trial in the drug case.[7] Having not received a reply, defendant's counsel renewed the request on December 6, 2017.

The State first provided discovery in the witness tampering case on December 15, 2017, when the State revealed, despite prior assertions to the contrary, that the confidential informant had been financially compensated for his work as an informant in the drug case. The State provided some additional documentation regarding the confidential informant on December 19, 2017, and provided information concerning some of the payments made to the confidential informant in connection with his cooperation in defendant's drug case on January 3, 2018.

---

[7] During a February 21, 2017 proceeding, the deputy attorney general agreed that the planned handling of the two cases "until very late in the game was that the State was going to try the first[-]degree drug charge and then . . . see where [it] went with the witness tampering."

A-4459-17T3

On January 12, 2018, the court heard argument and granted the State's motion to consolidate the drug and witness tampering cases for trial. The court found "the evidence that would support the [witness tampering] indictment . . . would clearly be admissible to support a consciousness of guilt theory in the drug charge." The court was "satisfied that the probative value of this evidence is not outweighed by any prejudice," but noted it was "a little bit late" for the State "to be filing" the consolidation motion.

The court also ordered the State to provide any outstanding discovery and instructed the parties to return for a pretrial conference on the witness tampering case. The court emphasized that the deputy attorney general at the hearing was "new to this case, new being in the last several months anyway and a lot of [the discovery] discussions occurred with counsel who was in the case prior to" the new deputy attorney general's involvement. The State refused to represent that all discovery had been produced because it had "been finding out information through the State Police . . . over the past several months," but the deputy attorney general represented that the State had "provided everything that [it] . . . [had] currently." The court accepted the State's representation, but stated the answer was "unacceptable" because the February 27, 2018 trial was six weeks away and defendant had already "been to plea cutoff in this case."

During the proceeding, the deputy attorney general inexplicably failed to mention to the court or counsel that search warrants had been issued for the cellphones and information from the cellphones had been obtained from the execution of the warrants but not yet provided to defendant.

On January 16, 2018, defendant reprised his request for information regarding any past cooperation between the confidential informant and the State. The State objected, arguing it had no obligation to provide information concerning the confidential informant's cooperation in other investigations and prosecutions.

On February 5, 2018, the parties appeared for a pretrial conference in the witness tampering case. Defense counsel advised the court she intended to file a motion to compel the production of discovery related to the confidential informant. The court did not conduct the pretrial conference but instead ordered a briefing schedule for defendant's motion. The court scheduled a February 21, 2018 hearing on the motion, but advised that the trial would proceed as scheduled on February 27. The deputy attorney general again failed to disclose the cellphone search warrants or the information obtained when the warrants were executed in December 2017.

A-4459-17T3

On February 6, 2018, the State supplied additional discovery in the drug and witness tampering cases, including defendant's signed <u>Miranda</u> card, a photograph of defendant, the confidential informant's drawing of a house, two search warrant affidavits, three evidence receipts and a lab report. For the first time, the State also separately alerted defendant concerning the cellphone search warrants and searches, providing copies of the search warrant affidavits and two discs containing hundreds of pages of encrypted data seized two months earlier during the search of the phones. On February 8, 2018, the State provided additional discovery in the witness tampering case.

Six days later, defendant filed a motion to exclude the late cellphone data discovery under <u>Rule</u> 3:13(f). The trial court heard oral argument on the motion on February 21, 2018, and noted its ongoing frustration with the State because of its numerous inaccurate representations during prior proceedings that discovery was complete. The court noted the State's failure to search the phones for two-and-a-half years, its decision to conduct the searches after the plea cutoff proceeding in the drug case, its failure to disclose the December 2017 cellphone searches and their results during proceedings in January and February 2018, and its belated disclosure on February 6, 2018, of the search warrants and information seized from the phones, only ten days before jury selection in the

trial was to begin. The court did not rule on defendant's motion to exclude the information seized from the phones and instead required the State to submit a certification detailing the discovery history in the cases and the reasons for its failures and delays in providing discovery. The court adjourned the trial.

On March 6, 2018, the State finally responded to defendant's request for discovery regarding two witnesses who the confidential informant claimed observed the witness tampering; the State's response was that it did not have a full name or contact information for either individual because they were unknown to the confidential informant.

On March 8, 2018, the deputy attorney general filed the court-ordered certification on the discovery history of the cases and mailed defendant a copy of ostensibly all discovery in both the drug and witness tampering cases.

On April 4, 2018, the court heard further argument on defendant's motions to compel discovery of information concerning payments to the confidential informant and to exclude the cellphone records. The deputy attorney general acknowledged that discovery concerning the confidential informant should have been disclosed at the outset of the drug case because the distribution charge against defendant was dependent on the confidential informant's testimony. The deputy attorney general also admitted to the "possibility" that the State made a

conscious choice not to disclose the identity of the confidential informant until ordered by the court. The deputy attorney general conceded that the State's agreement with the confidential informant was an important and relevant document in the drug case, but could offer no explanation why it had not been turned over to defendant in discovery. The court rejected the deputy attorney general's explanation that the delays in the production of discovery were the result of State Police actions, noting the Attorney General has supervisory authority over the State Police.

The court heard argument on defendant's motion to bar the information seized from the cellphones at trial. The deputy attorney general indicated the State perceived it had a strong case against defendant on the drug charges and the information from the cellphones was "something additional and supplemental for trial." She further acknowledged her failure to disclose the State's plan to obtain the search warrants for the phones at the October 23, 2017 pretrial conference and plea cutoff proceeding "gets pretty close to a sandbag" of defendant, deprived defendant of the ability to make a knowing decision about how to proceed in the case, deprived defense counsel of the ability to provide good legal advice and was not fair.

The deputy attorney general represented that the decision to move to consolidate the drug and witness tampering cases was not made until after the pretrial proceeding in the drug case, and the motion was made without regard to the effect it would have on the scheduled trial date. She further admitted the motion was filed on November 15, 2017, immediately following the trial adjournment request telephone conference during which she did not disclose that the motion would be filed, and that, prior to filing the motion, the State had not provided any discovery to defendant in the witness tampering case.

The deputy attorney general also agreed the evidence in the witness tampering case should have been provided separately as discovery in the drug case because it pertained to the confidential informant who allegedly witnessed the drug distribution charged in the indictment. The deputy attorney general acknowledged that even after the consolidation of the cases on January 12, 2018, there were "significant items . . . missing" from the discovery due to defendant.

On April 10, 2018, the trial court rendered an oral decision on defendant's motions and sua sponte dismissed the witness tampering charge, vacated the order consolidating the cases, and barred the State's use of evidence seized from the cellphones following the October 23, 2017 pretrial conference in the drug

13

case.[8]  The court's sua sponte actions were founded on its determination that the New Jersey Division of Criminal Justice "displayed . . . a cavalier and arrogant indifference to its discovery obligation[s]," and "violated [its] inherent obligation to promote fundamental fairness and protect the basic rights of people who [are] accused of committing a crime."  The court noted that the "Division has made representations . . . it didn't keep" and "affirmatively failed to disclose information . . . which any reasonable person would know that the [c]ourt wanted."

The court detailed the numerous court proceedings that occurred during the two matters,[9] recounted the State's failure to provide discovery in the witness tampering case until after the consolidation motion was filed, and explained that it would not have granted the consolidation motion if it had known that, due to the State's failure to honor its obligation to provide automatic and broad

---

[8]  The court also ordered that the State provide in discovery information related to payments made by the State to the confidential informant.  The State does not challenge that portion of the court's order and we therefore do not address it.

[9]  The court noted that it reviewed the audio recordings of all of the prior proceedings in the two cases and incorporated the record of those proceedings into its decision.  The State, however, failed to include in the record on appeal the transcripts of all of the proceedings, other than the grand jury hearings, occurring prior to the January 12, 2018 hearing on the State's consolidation motion.  See R. 2:5-4(a).

discovery, the witness tampering case was not prepared for the trial that was scheduled only weeks later. The court observed that the State's failure to provide the discovery deprived defendant's counsel of the opportunity to provide effective assistance because she could not adequately assess the State's case or prepare for trial. The court found the State's failure to timely provide the discovery in the witness tampering case "constitutes an egregious carelessness tantamount to [a] suppression of evidence against . . . defendant."

The court further found the State committed a "significant additional discovery violation" by choosing to wait until after the pretrial proceeding in the drug case to obtain the search warrants and information from the cellphones and by misrepresenting at the pretrial hearing and in the pretrial memorandum that discovery was complete. The court found the State had the cellphones for more than two years before the search warrants were sought and made a strategic decision not to search the phones prior to the pretrial conference and plea cutoff proceeding, instead opting to obtain the search warrants and information from the cellphones only after defendant rejected the State's plea offer and the court entered the pretrial memorandum. The court also noted the State's consistent and inexplicable failure to disclose the search warrants and the search of the cellphones during the October 23, 2017 proceeding and the numerous court

interactions and exchanges with defense counsel following the issuance of the warrants in November 2017 and prior to February 6, 2017. The court found the State's actions constituted a "deliberate failure to candidly share . . . important information in this case."

The court concluded the State's actions unfairly deprived defendant of the opportunity to make a fully informed decision concerning the State's plea offer at the October 23, 2017 pretrial conference and plea cutoff proceeding, and reasoned that "the best way to address this matter is simply to restore the defendant to the exact position that he was in on the day that the pretrial memorandum was completed [in the drug case] and the day that the State represented that its discovery was complete and that it was ready for trial." The court found it was "fair to make the State honor that choice" and "fundamentally unfair to let the State make representations of plea cutoff and then act to strengthen [its] case in anticipation of trial" through, not just the motion to consolidate, but "the search warrants concerning the phones." The court concluded that defendant's decision to proceed to trial "was not fully informed" because his lawyer did not have all the State's discovery and thus could not "provide him with the most effective assistance possible."

A-4459-17T3

The court also determined it was inappropriate to reward the State's "unilateral decision making" which caused months of delay in bringing defendant's drug case to trial following the plea cutoff proceeding. The court vacated its January 12, 2018 order consolidating the drug and witness tampering cases for trial, finding the State had failed to provide discovery in the witness tampering case prior to filing the motion for consolidation and "sandbagg[ed] . . . defendant." The court found the State's consolidation motion was "designed to increase the likelihood of [defendant's] conviction," the State indicated it would provide discovery to defendant when he was arraigned on the witness tampering charge but did not, and the State's failure to provide the discovery both before and after the consolidation motion was "borne of abject indifference and a complete lack of due diligence." The court dismissed the witness tampering indictment with prejudice, finding the State's conduct appalling and noting discovery in the witness tampering case "should have been provided substantially earlier at or near the time of the arraignment at a minimum."

The court barred the State from using at trial any evidence it provided in discovery after the October 23, 2017 pretrial conference, where the State disingenuously represented that discovery was complete. The court permitted

defendant to use at trial evidence provided by the State after October 23, 2017, including the cellphone records, without "opening the door" to the State's use of the evidence. The court, however, ordered that the State could move at trial to utilize evidence produced following the October 23, 2017 pretrial conference if defendant relied on such evidence in the first instance at trial. The court also directed that the State provide all outstanding discovery related to the drug case.

The court entered an April 10, 2018 order dismissing the witness tampering indictment, vacating the order consolidating the drug and witness tampering indictments for trial, barring the State's use of any discovery produced following the October 23, 2017 pretrial conference in the drug case, and allowing defendant to rely on such evidence without opening the door to the State's use of such evidence. We granted the State's motion for leave to appeal the court's order.

On appeal, the State presents the following argument for our consideration:

POINT I

THE JUDGE ABUSED HIS DISCRETION BY IMPOSING UNNECESSARILY DRACONIAN SANCTIONS TO ADDRESS DISCOVERY ISSUES THAT WERE NOT INTENTIONAL, EGREGIOUS, OR PREJUDICIAL.

II.

We consider the State's argument in the context of basic principles applicable to the State's grave responsibilities in its prosecution of criminal cases. "Because of the overwhelming power vested in his [or her] office, [a prosecutor's] obligation to play fair is every bit as compelling as his [or her] responsibility to protect the public." State v. Torres, 328 N.J. Super. 77, 94 (App. Div. 2000) (second alteration in original); see also RPC 3.8 (outlining special responsibilities of prosecutors). Our Supreme Court has explained that "[t]he heightened responsibilities of prosecutors include faithful adherence to all . . . protections accorded defendants[.]" State v. Harvey, 176 N.J. 522, 529 (2003) (alterations in original) (quoting State v. Carreker, 172 N.J. 100, 115 (2002)). Among those protections is the defendant's right to discovery.

A "[d]efendant's post-indictment right to discovery is automatic" under our Rules of Court. State v. Gilchrist, 381 N.J. Super. 138, 145 (App. Div. 2005) (quoting Pressler, Current N.J. Court Rules, cmt. 3.1 on R. 3:13-3 (2006)). A criminal defendant is "entitled to broad discovery under Rule 3:13-3," State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), and our Supreme Court has recognized "our longstanding case-law view in favor of the exchange

of pretrial discovery and the court rule that makes pretrial access to the evidence a critical right for all defendants," State v. Scoles, 214 N.J. 236, 257 (2013).

The State has a continuing duty to provide the requisite discovery during the course of a criminal proceeding. R. 3:13-3(f). However, where, as here, a trial court determines that the State has failed to comply with its discovery obligations under the Rule, the court

> may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate.
>
> [Ibid.]

"A trial court's resolution of a discovery issue is entitled to substantial deference and will not be overturned absent an abuse of discretion." State v. Washington, 453 N.J. Super. 164, 179-80 (App. Div. 2018) (quoting State v. Stein, 225 N.J. 582, 593 (2016)). However, we will not defer to discovery orders that are "wide of the mark" or "based on a mistaken understanding of the applicable law." Id. at 180 (quoting State v. Hernandez, 225 N.J. 451, 461 (2016)). We review "the meaning or scope of a court rule . . . de novo" and "do not defer to the interpretations of the trial court . . . unless we are persuaded by

[its] reasoning."  Ibid. (second and third alterations in original) (quoting State v. Tier, 228 N.J. 555, 561 (2017)).

Prior to addressing the court's exercise of its discretion in imposing the specific sanctions at issue here, we first reject the State's contention that no sanctions are appropriate because the discovery violations, which the State does not dispute, were inadvertent.  Stated differently, the deputy attorney general representing the State on appeal[10] contends in part that we should reverse the court's order because the "State did not intentionally or carelessly withhold the discovery."  We are unconvinced.

The court's findings concerning the State's violation of the discovery rules are well-supported by sufficient evidence in the record.  After representing to the court at defendant's arraignment on the witness tampering charge that it would provide the discovery in the matter to defendant, the State simply, undeniably and without any explanation failed to do so.  As the trial court aptly noted, discovery in the witness tampering case was pertinent to the drug case,

---

[10] The deputy attorneys general representing the State in the trial court have not made an appearance in this appeal.  The deputy attorney general representing the State on this appeal, who ably handled this matter with professionalism and candor, did not participate in any of the proceedings before the trial court and was not involved in the State's discovery infractions that are the subject of this appeal.

A-4459-17T3

but the State failed to honor its continuing obligation to supply that discovery in the drug case as well. Moreover, as we have already detailed, the State's discovery improprieties did not end there; it planned to obtain search warrants for the cellphones prior to the October 23, 2017 plea cutoff proceeding in the drug case but never advised defendant or the court of that fact and instead misrepresented to the court and in the pretrial memorandum that discovery was complete. More importantly, the State permitted defendant to proceed to plea cutoff, and reject the State's plea offer, without all of the discovery the State planned to obtain and use later at trial. The State further did not advise the court of the warrants or information harvested from the phones during the telephone conference on its trial adjournment request, the argument on the consolidation motion or the February 5, 2017 conference. When offered an opportunity to provide a reason for its consistent and ongoing lack of disclosure, the State offered nothing more than a belatedly candid acknowledgment of its inexplicable failures.

The State also failed to disclose its intention to make the consolidation motion at the time it requested a trial adjournment for purported witness unavailability issues, filing the motion only hours after the adjournment was secured even though it had never provided any discovery related to the witness

tampering case in either that case or the drug case. When the consolidation motion was argued, the State not only failed to disclose the existence of the cellphone search warrants and the information seized from the cellphones, it did not disclose that it had not provided complete discovery to defendant in the witness tampering case or the deputy attorney general's then realization she had not been provided all of the discovery from the State Police in that matter. Instead, the State was content to ignore its failures to comply with its discovery obligations and let defendant and his counsel proceed to a trial scheduled only weeks later where the State intended to request that an extended term life sentence be imposed if defendant was convicted.

Here, the trial court generously found the State's conduct constituted gross carelessness and indifference, but regardless of how the conduct is characterized, it is wholly inconsistent with the State's obligation to "promote fairness and protect the basic rights of all citizens, even those [it] believe[s] to be guilty." State v. Clark, 347 N.J. Super. 497, 508 (App. Div. 2002). We have observed that "[a] criminal trial is not a jousting match or board game in which strategy outweighs fairness and rules are celebrated in the letter and not the spirit," ibid., but here the State's conduct, failure to honor its discovery obligations, lack of disclosure, and strategy to gather and slowly mete out

23

additional discovery to strengthen its case against a defendant who rejected a plea offer is the paradigm of abhorrent and unacceptable gamesmanship not only with defendant, but also with the court.

The State asserts that the court's order dismissing the witness tampering indictment constitutes a "draconian sanction[]" in response to "inadvertent discovery violations that did not prejudice defendant and for which any number of less severe remedies would have readily sufficed." While the court possesses "inherent powers" to dismiss an indictment when the State fails to comply with discovery rules, State v. Abbati, 99 N.J. 418, 429 (1985); see also R. 3:13-3(f), the court should only grant a motion to dismiss an indictment in limited circumstances, State v. Zembreski, 445 N.J. Super. 412, 424-25 (App. Div. 2016). "One of the guiding principles to be followed by a court when considering a motion to dismiss an indictment is that 'a dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground.'" Ibid. (quoting State v. Williams, 441 N.J. Super. 266, 271 (App. Div. 2015)).

"Before a dismissal of an indictment is warranted . . . there must be a finding of intention inconsistent with fair play and therefore inconsistent with due process, or an egregious carelessness or prosecutorial excess tantamount to

suppression." State v. Washington, 165 N.J. Super. 149, 156 (App. Div. 1979) (quoting State v. Laganella, 144 N.J. Super. 268, 282 (App. Div. 1976)). "In the absence of these conditions," the court should dismiss an indictment "only if otherwise there would be manifest and harmful prejudice to defendant." Ibid. (quoting Laganella, 144 N.J. Super. at 282-83). However, "the public interest in the completion of criminal trials weighs against [dismissing an indictment] where other remedies are available," State v. Ruffin, 371 N.J. Super. 371, 388 (App. Div. 2004), and "this drastic remedy is inappropriate where other judicial action will protect a defendant's fair trial rights," Clark, 347 N.J. Super. at 508.

We share the trial court's justifiable outrage at the State's conduct and failure to honor its discovery obligations and duty to make disclosures where appropriate. Nonetheless, we are not convinced the court correctly exercised its discretion by dismissing the indictment charging witness tampering, and reverse that portion of the court's order. Dismissal of an indictment due to a discovery violation is a "last resort because the public interest, the rights of the victims and the integrity of the criminal justice system are at stake." Ruffin, 371 N.J. Super. at 384. That is particularly true where the charge to be dismissed is one for witness tampering, and the putative victim is an important witness in the prosecution of other significant criminal charges.

Here, dismissal of the witness tampering indictment was unnecessary for the protection of defendant's right to a fair trial on that charge because the court's decision, which we affirm, to vacate the consolidation order protected defendant's right to a fair trial in the witness tampering case. See, e.g., Zembreski, 445 N.J. Super. at 426-27 (finding no abuse of discretion where the court denied defendant's motion to dismiss a superseding indictment after the court offered defendant more time to prepare for trial and the defendant declined); Clark, 347 N.J. Super. at 508 (holding a trial judge "properly denied the defense motion to dismiss the indictment" after the prosecutor failed to disclose information regarding a witness). Indeed, the court recognized "that it ha[d] arguably taken appropriate ameliorative action by vacating the order consolidating the two indictments for trial."

"The choice of sanctions appropriate for discovery-rule violations is left to the broad discretion of the trial court." State v. Marshall, 123 N.J. 1, 134 (1991). The court properly exercised that discretion by vacating the consolidation order to remedy the State's failure to provide discovery in that matter prior to the filing of the consolidation motion and its failure to provide complete discovery in the matter after the motion was filed. The court's vacation of the consolidation order, however, eliminated any prejudice to defendant's

A-4459-17T3

ability to prepare his defense to the witness tampering charge because the trials on the drug and witness tampering indictments will proceed separately in accordance with defendant's understanding at the time of the October 23, 2017 pretrial conference and plea cutoff proceeding.

Moreover, the late delivery of the discovery in the witness tampering case did not prejudice defendant in making his decision to reject the plea offer in the drug case. Although no discovery on the witness tampering charge had been provided prior to the October 23, 2017 plea cutoff proceeding, defendant and his counsel were aware they did not have the discovery, but did not deem its absence relevant to defendant's determination to accept or reject the State's plea offer in the drug case. That is, defendant rejected the plea offer in the drug case with full knowledge he did not have the discovery from the witness tampering case.

We therefore affirm the court's order vacating its January 12, 2018 order consolidating the drug and witness tampering cases. We reverse the court's order dismissing the witness tampering indictment; the sanction is unnecessary to protect defendant's right to a fair trial.

We do not find the court abused its discretion by barring the State's use in the drug case of the discovery it produced following the October 23, 2017

proceeding at which the State represented that discovery was complete. We recognize that "the sanction of preclusion is a drastic remedy and should be applied only after other alternatives are fully explored[.]" Washington, 453 N.J. Super. at 190 (alteration in original) (quoting State v. Scher, 278 N.J. Super. 249, 272 (App. Div. 1994)). Rule 3:13-3(f) "specifically provides for discretion in formulating a sanction for a discovery violation," Clark, 347 N.J. Super. at 509, and expressly allows for an order "prohibit[ing a] party from introducing . . . the material not disclosed," R. 3:13-3(f). "An adjournment or continuance is a preferred remedy where circumstances permit." Clark, 347 N.J. Super. at 509. However, "repeated and flagrant derelictions" of the discovery rules "may require application of the sanction of preclusion." State v. Burnett, 198 N.J. Super. 53, 61 (App. Div. 1984).

Here, the Court determined the State's discovery violations, including its failure to provide discovery in the witness tampering case and in the drug case, and other conduct amounted to "repeated and flagrant derelictions" of the discovery rules and that preclusion of discovery produced after execution of the pretrial memorandum was the appropriate remedy. We agree. The court shall only conduct a pretrial conference and schedule a case for trial "[i]f the court determines that discovery is complete." R. 3:9-1(f). The State represented in

28

the pretrial memorandum that, but for one document, discovery was complete, but at the same time already planned to seek a search warrant for the cellphones and knew it failed to provide the discovery in the witness tampering case in the drug case. Defendant relied on that representation in deciding to proceed to trial, and the court relied on that representation in scheduling the matter for trial. The State then obtained search warrants for defendant's cellphones, obtained information from the phones, withheld disclosure of the search warrants and information for two months, and made disclosure only nine days before jury selection was to begin. The State's conduct was not the result of inadvertence or the late discovery of previously unknown evidence; it was the product of an intentional and hidden strategy.

The State contends the trial court "effectively created a new rule wherein the State is barred at plea cutoff from conducting further investigation to strengthen its case or respond to potential defenses at trial." The State mischaracterizes what occurred. The rule has always been that the State must provide full and automatic discovery to a criminal defendant, cannot misrepresent to the court that discovery is complete when it has an active plan to obtain discovery in the future, is not permitted to fail to disclose that it applied for search warrants and obtained additional discovery materials after a pretrial

memorandum has been executed and a trial date has been set, and cannot delay the production of newly discovered information for two months while knowing that there are only weeks until a pending trial. The trial court did not create a new rule. It simply imposed an appropriate sanction for the State's clear violation of well-established rules and principles that provide the foundation for a criminal defendant's right to a fair trial. Cf. Washington, 453 N.J. Super. at 191 (setting aside the trial judge's exclusion of DNA evidence because the State did not intentionally mislead the defendant, the report's completion "was delayed for the straightforward reasons set forth in the certifications" regarding the State Police's conduct, and the prosecutor immediately supplied the report once available).

The State never sought relief from the pretrial memorandum from the court, but instead chose to employ a strategy of quietly developing and thrusting upon defendant and the court additional discovery with the goal of bolstering its case after defendant rejected the State's plea offer. There is no doubt the State acted improperly and unfairly to gain an unfair advantage over defendant following his final rejection of the plea offer. The deputy attorney general admitted as much in April 2018, after the nature and extent of the State's conduct was exposed; she acknowledged the State's actions—her actions—"get[] pretty

close to a sandbag," deprived defendant of the ability to make knowing decisions about how to proceed in the drug case, denied his attorney the ability to give him effective legal advice and were not fair.

Under such circumstances, we discern no basis to conclude the court's decision to bar the State's use of the discovery disclosed after the October 23, 2017 proceeding constituted an abuse of discretion. See id. at 179-80. To the contrary, the court's measured and well-reasoned decision barring the State's use at trial in the drug case of the discovery produced following the October 23, 2017 proceeding constituted a justified and proper exercise of the court's discretion.

For these reasons, we affirm the court's order precluding the State from using discovery submitted after the October 23, 2017 pretrial memorandum. We read the remainder of the court's order, which conditions the State's use of the discovery materials provided after October 23, 2017, upon the approval of the court if defendant uses the materials in the first instance, as nothing more than the court's exercise of its standard gatekeeping function concerning the admission of evidence at trial. Stated differently, we do not read that portion of the court's order limiting the State's use of the post-October 23, 2017, discovery materials to prohibit the State's use of the materials, to the extent admissible

31

under the Rules of Evidence, to address, refute or rebut issues raised by defendant's use, if any, of those materials. Thus, contrary to the State's contention, the order does not give "defendant free reign [sic]" to use the materials while precluding the State from using the records "in any way."

Affirmed in part, reversed in part and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4459-17T3