**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0975-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KESHAWN MCNEIL,

    Defendant-Appellant.

_____

Submitted September 24, 2024 – Decided October 15, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 07-10-3548.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Keshawn McNeil appeals from an October 31, 2022 Law Division order denying his motion for a new trial based on newly discovered evidence. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

We summarize the salient facts and procedural history as set forth in our prior opinions affirming defendant's conviction and sentence, State v. McNeil (McNeil I), No. A-0856-09 (App. Div. Oct. 21, 2011) (slip op. at 1-29), and affirming the denial of his petition for post-conviction relief (PCR), State v. McNeil (McNeil II), No. A-2614-13 (App. Div. Sept. 7, 2016) (slip op. at 1-22). We provide only the pertinent facts relevant to this appeal.

Defendant's girlfriend, Staci Marshall, resided in a rental apartment in Newark owned by Fabio Borges and Luciane Nunes. McNeil II, slip op. at 2. On February 23, 2007, Marshall received an eviction notice addressed to another tenant. Ibid. After calling Nunes, Marshall "learned that eviction proceedings had been instituted against her as well." Ibid. She "agreed to pay her overdue rent the next day." Ibid.

On February 24, while driving defendant, "an [a]spiring rapper," to a music studio for a video shoot, Marshall told defendant her "funds would be low

for the rest of the week" after paying rent. "Defendant told her not to worry and that he would 'get the money back.'" Ibid. "A plan was made that defendant would rob Borges after Marshall had paid her rent, and then she and defendant would go to Atlantic City." Ibid. Marshall understood and agreed defendant would rob Borges.

After requesting Borges to come collect $1,250 in overdue rent, Marshall "contacted defendant, who robbed Borges and, during the robbery, shot him, causing his death from a single gunshot wound to the [abdomen]." Id. at 2-3. Thereafter, defendant and Marshall met in East Orange, where he discarded Borges's wallet in a trash can and credit cards in a sewer. Id. at 3. They "then took the 10:30 p.m. bus to Atlantic City, where defendant gave Marshall $400 as gambling money." Ibid. Defendant kept the remaining monies stolen from Borges. Marshall maintained she initially thought defendant only robbed Borges. She later learned from defendant he had shot Borges "where he kn[ew] Borges [would] be okay" because "he felt like shooting his gun that day." They subsequently "returned to Marshall's residence by the first morning bus." Ibid.

On February 26, "[f]ollowing a police interrogation, and despite threats of harm from defendant, Marshall implicated defendant in the robbery and shooting" in two separate police statements. See ibid. She also revealed "the

3

location of Borges's wallet and credit cards," which the police recovered.  Ibid.
The police arrested Marshall that day.

On October 19, defendant and Marshall were charged in an Essex County indictment with:  first-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count two); and first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three). Defendant was separately charged with:  first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count four); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six).

On January 30, 2008, Marshall entered a negotiated plea agreement with the State.  In exchange for the State recommending no greater than a fifteen-year sentence subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2:43-7.2, Marshall agreed to testify against defendant.  She pleaded guilty to first-degree conspiracy to commit robbery and robbery.

Beginning in May 2009, the trial judge presided over an eleven-day trial with multiple expert and fact witnesses, including Marshall.  Defendant was represented at trial and did not testify.  During defense counsel's cross-

4

examination of Marshall, he sought to impeach her credibility. For example, regarding her employment status, he elicited Marshall's acknowledgment that she had wrongly testified to being laid off from her employer two days before the murder, when in fact, she was terminated approximately three months earlier for her poor job performance. Further, on cross-examination, she admitted telling the police in her second statement she saw defendant's gun before the shooting but omitted details about allegedly driving defendant to purchase bullets. Defense counsel also questioned Marshall on her negotiated plea bargain, eliciting that she hoped to receive the minimum of a ten-year sentence with an eighty-five percent period of parole ineligibility:

> [Defense counsel:] Now you cut that plea agreement with the Prosecutor's Office and there's gonna come a day when you're gonna go for sentencing, right?
>
> [Marshall:] That is correct.
>
> [Defense counsel:] And on that day, you're hoping to get the minimum allowed under the law. Right?
>
> [Marshall:] Yes, sir.
>
> [Defense counsel:] And the minimum --
>           . . . .
>
> [Defense counsel:] -- you stated is ten years. Right?
>
> [Marshall:] Yes, sir.

5

[Defense counsel:] And you know, based on your research, that ten years is not ten years without parole; it's ten years at eighty-five percent. Right?

[Marshall:] That is correct, sir.

[Defense counsel:] So really, what ten years would be . . . eight-and-a-half years in prison?

[Marshall:] I believe so, yes.

. . . .

[Defense counsel:] Which you're hoping for.

[Marshall:] Yes, sir.

On June 3, the jury convicted defendant on count four of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), instead of first-degree murder, and on all remaining counts. See McNeil II, slip op. at 4. Following merger, the judge sentenced defendant on count three to life imprisonment with a thirty-year period of parole ineligibility under N.J.S.A. 2C:11-3(b), subject to NERA, N.J.S.A. 2C:43-7.2, and the Graves Act, N.J.S.A. 2C:43-6(c), and to a concurrent five-year sentence on count five. The judge sentenced Marshall to ten years with an eighty-five percent period of parole ineligibility for her convictions on first-degree conspiracy to commit robbery and robbery. Defendant appealed, and we affirmed his conviction and sentence on October 21, 2011. McNeil I, slip op. at 1-29.

6

After the PCR judge denied defendant's June 2012 PCR petition, McNeil II, slip op. at 5, defendant filed a self-represented motion for reconsideration, which a second PCR judge denied "treat[ing it] . . . as a second petition for PCR."  We affirmed the denial of the PCR petition and reconsideration motion. Id. at 1-22.

In April 2019, the United States District Court for the District of New Jersey denied defendant's petition for a writ of habeas corpus brought under 28 U.S.C. § 2254.  See McNeil v. Johnson, No. 18-10003, 2019 WL 1650283, at *1-13 (D.N.J. Apr. 17, 2019).

In January 2020, defendant filed a self-represented motion for a new trial based upon newly discovered evidence.  Appointed PCR counsel filed a supplemental brief, asserting the newly discovered evidence was Marshall's "[v]iolation of [p]robation [(VOP)] . . . from a 2005 disorderly persons conviction for simple assault" that was pending before Marshall entered her plea agreement and favorably resolved by dismissal.  On December 20, 2005, a Special Remand judge had sentenced Marshall to a one-year term of probation for committing simple assault in an unrelated matter.  On November 28, 2006, Marshall was charged with violating probation for failing to pay "[c]ourt[-]imposed financial obligations" and "undergo anger management

counseling." On January 22, 2007, Marshall's probation was extended until June 30. On June 14, Marshall was again charged with violating probation because she failed to pay "[c]ourt[-]imposed financial obligations," "failed to undergo anger management counseling," and was arrested for the offenses at issue on appeal—"conspiracy, robbery[,] and homicide." On July 16, Marshall's probation was terminated. Notably, Marshall's presentencing report, dated April 23, 2009, delineated Marshall's prior criminal history but did not include her disorderly persons simple assault conviction.

On September 27, 2022, the motion judge held an evidentiary hearing. Defense counsel testified the State's theory relied on Marshall's testimony that defendant "robbed . . . and killed" Borges after she paid the overdue rent. He testified defendant's defense was he did not commit the robbery and killing. Counsel explained "the heart of [defendant's] defense" was to demonstrate Marshall was a liar because she "was practically the sole witness against him." He further testified that, to his recollection, he was not provided discovery regarding Marshall's VOP, which was pending from her arrest in this case until the VOP's resolution "at some point . . . prior to trial." Defense counsel maintained he would have used the VOP "to show [Marshall] was motivated" by her own self-interest to fabricate and to impeach her credibility. He

acknowledged, however, that "[i]f it was a disorderly persons adjudication, [he] could[] [not] have cross-examined on it."

On October 31, the motion judge issued an order denying defendant's motion for a new trial. In his accompanying statement of reasons, the judge found defendant satisfied the first prong of a Brady[1] violation claim because "the evidence [of Marshall's VOP] [wa]s clearly favorable to the accused." The judge, however, found the second element was not satisfied because the facts failed to demonstrate that the State purposefully or inadvertently suppressed the evidence. Regarding the third element, he determined the evidence was not material. The judge reasoned:

> In this case, Marshall had a pending VOP for a disorderly persons conviction that was disposed of nearly [six] months after the murder in February 2007. However, at that time, Marshall was also charged with first-degree murder, first-degree robbery, and conspiracy. She had exponentially more significant charges hanging over her head than a pending VOP for a disorderly persons conviction from 2005 or a [controlled dangerous substance] charge as in [State v. Spano, 69 N.J. 231 (1976), or State v. Rodriguez, 262 N.J. Super. 564 (App. Div. 1993)]. Marshall eventually pled to first-degree robbery and conspiracy, and her first-degree murder charge was dismissed. The defense was able to cross-examine Marshall on her cooperation with law enforcement and the resulting favorable

---

[1] Brady v. Maryland, 373 U.S. 83, 87 (1963).

disposition of her murder [c]harges. However, even with such substantial impeachment evidence, the jury ultimately rejected [trial] counsel's claims that Marshall was incredible and found [d]efendant guilty. If a favorable disposition of a first-degree murder charge did not sway the jury, the [c]ourt cannot find that there is even a "reasonable probability" that a pending VOP for a disorderly persons conviction would.

In considering defendant's newly discovered evidence claim, relying on the three-prong test set forth in State v. Carter, 85 N.J. 300 (1981), the judge found defendant satisfied prong one because Marshall's pending VOP was proper impeachment evidence that defense counsel could have used to attack Marshall's credibility. The judge also found defendant satisfied prong two because Marshall's pending VOP was not discoverable through defense counsel's exercise of reasonable diligence. Similar to his materiality findings regarding defendant's Brady violation claim, the judge determined Marshall's pending VOP was not material for prong three and de minimis in "the context of the case as a whole."

On appeal, defendant presents the following point for our consideration:

POINT I

AS THE NEWLY DISCOVERED EVIDENCE THAT THE STATE'S PRIMARY WITNESS, . . . MARSHALL, HAD A PENDING MATTER FOR [A VOP] THAT HAD NOT BEEN DISCLOSED TO THE DEFENSE WAS MATERIAL AND WOULD HAVE UNDERMINED HER CREDIBILITY BEFORE THE JURY, THE MOTION COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR A NEW TRIAL

> (1) The fact that . . . Marshall had a pending matter that involved the Essex County Prosecutor's Office was material newly discovered [evidence] that warranted a new trial.
>
> (2) The failure by the Essex County Prosecutor's Office to disclose that . . . Marshall had a pending VOP matter violated defendant's Sixth Amendment [d]ue [p]rocess rights.

II.

We begin our analysis by acknowledging the legal principles governing motions for a new trial. Rule 3:20-1 provides:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. . . . The trial judge shall not, however, set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

11

"A trial court's ruling on a motion for a new trial 'shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.'" State v. Armour, 446 N.J. Super. 295, 305 (App. Div. 2016) (quoting R. 2:10-1). "[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). A defendant is permitted to seek a new trial on the ground of newly discovered evidence at any time. State v. Szemple, 247 N.J. 82, 99 (2021).

## A. Newly Discovered Evidence

We first address defendant's contention that the judge erred in denying his motion for a new trial based on newly discovered evidence. Our consideration of this argument is guided by well-established principles. In Carter, 85 N.J. at 314, our Supreme Court set forth the standard for granting a new trial based on newly discovered evidence:

> [T]o qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.

The movant must satisfy all three prongs before a court grants a new trial. State v. Ways, 180 N.J. 171, 187 (2004). "Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Id. at 187-88. "[T]he test to be satisfied under a newly discovered evidence approach is more stringent" than "the test of materiality for the granting of a new trial" under Brady. Carter, 85 N.J. at 314.

Under prong one of the Carter test, "[m]aterial evidence is any evidence that would 'have some bearing on the claims being advanced.'" Ways, 180 N.J. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). "Clearly, evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt would be material." Ibid. "Determining whether evidence is 'merely cumulative, or impeaching, or contradictory,' and, therefore, insufficient to justify the grant of a new trial requires an evaluation of the probable impact such evidence would have on a jury verdict." Id. at 188-89.

The second prong "recognizes that judgments must be accorded a degree of finality and, therefore, requires that the new evidence must have been discovered after completion of trial and must not have been discoverable earlier

through the exercise of reasonable diligence." Id. at 192. Lastly, the third prong requires a reviewing court to "engage in a thorough, fact-sensitive analysis to determine whether the newly discovered evidence would probably make a difference to the jury." Id. at 191. "[P]rongs one and three are inextricably intertwined"; "'evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory.'" State v. Nash, 212 N.J 518, 549 (2013) (quoting Ways, 180 N.J. at 189). This requires assessing such evidence in the context of the "'corroborative proofs' in th[e] record." See Szemple, 247 N.J. at 110 (quoting State v. Herrerra, 211 N.J. 308, 343 (2012)); Ways, 180 N.J. at 195 (determining "the newly discovered evidence, when placed in context with the trial evidence, sufficiently implicate[d]" an individual other than defendant "in the killing").

Defendant argues the State's failure to provide notice of Marshall's VOP for her simple assault disorderly persons conviction warrants a new trial because it foreclosed further impeachment of Marshall's credibility, which was central to the case and vital to his defense. Defendant also contends the judge wrongly presumed the resolution of the VOP was insignificant because Marshall had entered a plea agreement with the State that contemplated her testimony and was

facing sentencing on charges of conspiracy to commit robbery, robbery, and felony murder at the time. We are unpersuaded.

Preliminarily, we note the judge correctly found defendant satisfied prongs one and two of the Carter test. Marshall was indisputably a key witness for the State and essential to the prosecution. The VOP was material to defendant's defense because it was relevant information for impeachment. Defendant maintained he did not commit the robbery and murder. Defendant utilized available impeachment evidence to cross-examine Marshall, seeking to demonstrate she fabricated facts regarding his culpability in her self-interests. Cf. Spano, 69 N.J. at 235 (noting defendant "could have attacked [the witness's] credibility by suggesting a possible motive for her testimony" if the State had disclosed receipt of a favorable "conditional dismissal of a criminal charge against her"). During closing argument, defense counsel contended Marshall lied to the jury and "was caging th[e] whole thing." He asserted while it was unclear the exact identity of the individual with whom Marshall committed the crime, all that was known was that Marshall lied. At the evidentiary hearing, defense counsel testified "the heart of [defendant's] defense" was to establish Marshall lied. As the judge correctly found, prong two was satisfied because he

15

did not know Marshall had the VOP and due diligence by defendant would not have yielded the information as it was not in her presentence report.

Under the third prong, defendant failed to demonstrate that successfully impeaching Marshall on her disorderly persons VOP, dismissed before she entered into her plea agreement, would have probably changed the jury's verdict. Here, defense counsel extensively cross-examined Marshall, eliciting inconsistencies in multiple aspects of her testimony. Counsel successfully got Marshall to concede discrepancies regarding her employment termination and account of first witnessing defendant's gun when she drove him to purchase bullets. Importantly, defense counsel elicited Marshall's admission she hoped to receive the minimum sentence of ten years with an eighty-five-percent period of parole ineligibility after testifying.

The judge correctly reasoned, "even with such substantial impeachment evidence, the jury ultimately rejected [trial] counsel's claims that Marshall was incredible and found [d]efendant guilty." The record amply supports the judge's conclusion that a new trial was not warranted as defendant failed to fairly substantiate the verdict would probably be different if the jury heard testimony from Marshall regarding her VOP; thus, we discern no abuse of discretion in the judge's denial of defendant's motion for a new trial.

16

## B. Brady Violation

We next turn to defendant's related contention that a new trial is warranted because the State committed a Brady violation by failing to disclose evidence of Marshall's VOP, thereby infringing on his due process rights. "[T]o determine whether a Brady violation has occurred," a court must consider three elements: "(1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case." State v. Brown, 236 N.J. 497, 518 (2019).

Regarding the first element, the United States Supreme Court has noted the Brady rule encompasses both impeachment and exculpatory evidence. See United States v. Bagley, 473 U.S. 667, 676 (1985). As to the second element, the "disclosure rule applies only to information of which the prosecution is actually or constructively aware." State v. Nelson, 155 N.J. 487, 498 (1998); see also State v. Washington, 453 N.J. Super. 164, 184 (App. Div. 2018) ("[A] prosecutor's constitutional obligation to provide exculpatory information 'extends to documents of which it is actually or constructively aware, including documents held by other law enforcement personnel who are part of the prosecution team.'" (quoting State v. Robertson, 438 N.J. Super. 47, 69 (App.

Div. 2014))). Regarding the third element, the evidence is deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682; see also State v. Landano, 271 N.J. Super. 1, 36 (App. Div. 1994).

Again, defendant argues Marshall's VOP was favorable impeachment evidence withheld by the State. He further contends the Essex County Prosecutor's Office would have known of Marshall's pending VOP in Essex County and its ultimate dismissal in her favor. He posits the judge erred in finding Marshall's VOP was de minimis because it was material impeachment evidence undermining Marshall's credibility, warranting reversal.

Under the first Brady element, the State cannot dispute it would have been favorable for defendant to have knowledge of Marshall's VOP and its dismissal after Borges's murder but before Marshall's negotiated plea agreement with the State. Regarding the second element, we part ways with the motion judge and conclude defendant sufficiently demonstrated the Essex County Prosecutor's Office had constructive notice of Marshall's VOP. Notably, the VOP was in the same county as defendant's case. The VOP and later dismissal were

contemporaneous to the investigation and Marshall's plea agreement. The State's constructive awareness and resulting inadvertent lack of disclosure satisfies the second element. "A prosecutor's obligation to 'turn over material, exculpatory evidence to the defendant' is well established and does not require extended discussion." Nash, 212 N.J. at 544 (quoting State v. Morton, 155 N.J. 383, 413 (1998)). "The obligation extends as well to impeachment evidence within the prosecution's possession." Ibid. (citing Strickler v. Greene, 527 U.S. 263, 280 (1999)).

While defendant established the first two elements, he falls short of demonstrating the VOP was material to his case under the third element. The record amply supports the motion judge's determination that Marshall "had exponentially more significant charges hanging over her head than a pending VOP for a disorderly persons conviction from 2005." In contrast to her disorderly persons VOP, Marshall faced sentencing on charges of first-degree conspiracy to commit robbery, robbery, and felony murder. As noted in our discussion in the preceding section, defense counsel cross-examined Marshall extensively on her plea agreement with the State, seeking to impeach her credibility and demonstrate her motive to fabricate. Counsel questioned Marshall on whether she "cut [a] plea agreement with the Prosecutor's Office"

and was "hoping to get the minimum allowed under the law." Marshall acknowledged her sentencing was postponed until after she testified against defendant, and she hoped to secure a more favorable sentence serving fewer years. But the jury nevertheless convicted defendant. We therefore reject defendant's contention that Marshall's VOP was material evidence, as there was no reasonable probability that disclosure to defendant would have produced a different result in the proceeding. See Brown, 236 N.J. at 518, 520.

In summary, we concur with the motion judge that given the gravity of Marshall's pending indictable charges and negotiated sentencing range at the time of her testimony, her disorderly persons VOP was comparatively insignificant and thus not material to defendant's case. We see no reason to disturb the motion judge's determinations that defendant failed to demonstrate a Brady violation, and a new trial was not warranted.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0975-22